(78 South. 803)

SMITH et al. v. DUVALL et al. (3 Div. 323.)

(Supreme Court of Alabama. Feb. 14, 1918. Rehearing Denied April 25, 1918.)

1. LIMITATION OF ACTIONS ⊜⊐195(3)—PARTITION—BURDEN OF PROOF.

In a suit for partition as between joint owners, where respondents show absence of joint ownership between claimants and respondents as to certain part of the property and adverse possession thereof, and disclaimed as to the remainder, and that limitations had begun to run against the complainants' ancestor holding such adverse possession under a former parol partition, and had continued for 25 years, up to the filing of the suit, the burden of proof was shifted to complainant to show that the statute of limitations was suspended.

2. PARTITION ⊜⊐74—PARTIES—JOINT OWNERSHIP.

In a suit for partition as between joint owners, the absence of necessary parties in interest as to a part of the property, ownership of which is disclaimed by respondents, does not

preclude determination of the fact of joint ownership between claimants and respondents in the remainder.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by James Duvall and another against Virginia Smith and another for partition. Decree for complainants, and respondents appeal. Reversed, rendered, and remanded.

The bill alleged joint ownership between all the parties to lot 434 on South Bainbridge street; the entrance being specified.

J. R. Thomas and Hill, Hill, Whiting & Stern, all of Montgomery, for appellants. Tilley & Elmore and W. A. Gunter, all of Montgomery, for appellees.

THOMAS, J. This suit in equity was for partition or sale for division among joint owners. It must be conceded that if it be a case for a sale of realty for division among joint owners, a reversal must be had for that all the parties in interest are not before the court. If the property is not held by joint owners, this result would not follow—at least on this ground.

The answer of respondents discloses a state of facts showing there was no joint ownership between the complainants and the respondents as to what we will call the "east end" of the lot in question, and enters a disclaimer as to the "west end" thereof. The averment is:

"That on, to wit, April 27, 1871, said property [described in the bill] was purchased by James Duvall and Levi Duvall jointly from Albert and Mary Elmore; that thereafter, and more than 20 years ago, the joint owners of said property divided and partitioned said property between themselves, and in said division the said Levi Duvall was allotted and accepted as his portion of said property the west one-half of said property, that is, the back half of said lot, and that the said Levi Duvall went into possession of the said west one-half of said property upon the said division, and continued to live on and claim the same as his portion of said property until his death in August, 1889; and that after said division, the said Levi Duvall never made any claim to any interest in or to any part of the east one-half of said lot; and that upon said division and partition between the joint owners of said property, more than 20 years prior to the filing of this bill of complaint in this cause, the said James Duvall and his wife, Nancy Duvall, was allotted and accepted upon said division the east one-half of said lot, that is, the front half of said lot; and that upon said division the said James Duvall and his wife, Nancy Duvall, went into the possession of the said east one-half of said lot; and that the said James Duvall and his wife, Nancy Duvall, remained in open, notorious, peaceable, exclusive, and adverse possession, under claim of ownership of said east one-half of said lot, from said time down to the death of James Duvall, which occurred during the year of, to wit, 1893, and that after the death of the said James Duvall, his wife remained in such possession of said east one-half of said lot continuously until she died, on, to wit, December 11, 1916, since which time your respondents, who are all of her heirs at law and next of kin of said James

Duvall and Nancy Duvall, have been in' such possession of said east one-half of said lot. Respondents further aver that during the life of the said Levi Duvall, the said James Duvall and Nancy Duvall allowed and permitted the said Levi Duvall to use, to wit, a six-foot alleyway from the lot of Levi Duvall to Bainbridge street on and over the extreme south side of the said east one-half of said lot as a passageway to get from the said lot owned by the said Levi Duvall to the street."

Respondents further claim title to the east half of said lot under the rule of prescription and of laches. It is then necessary to determine whether there is a joint ownership in the east half of the lot by complainants on the one hand and respondents on the other for an ascertainment of whether all proper parties are before the court for a final decree on the merits of the bill as one for the sale of joint properties for division among the joint owners thereof.

Aside from the testimony of the witnesses, the record shows a purchase of the lot by the ancestors, James and Levi Duvall, of parties at interest here on April 28, 1871; that in 1878 James Duvall assessed lot 1, square 7, Goldthwaite plat, to himself; and for that same year Levi Duvall assessed the west half of lot 1, square 7, Goldthwaite plat, to himself; that for 1881, 1882, 1883, and 1884, the respective assessments were made by said respective owners, being thus: "James Duvall, E. ½ of lot 1, Sq. 7, Goldthwaite plat, $300," and "Levi Duvall, W. ½ of lot 1, Sq. 7, Goldthwaite plat, $200." Separate assessments by the respective brothers of these separate respective properties were preserved each year to the time of their deaths—Levi Duvall dying, one witness states, on June 21, 1891; and after their deaths, 1896, 1900, to their respective estates; and 1901, 1903, 1904, to their respective heirs; and the two lots assessed to Nancy Duvall, respondents' ancestor, for the years 1906 to 1915, inclusive. Though James Duvall made a deed to his wife, Nancy, in 1881, to an undivided one-half interest, yet in the light of the whole evidence a parol partition of the lot purchased by James and Levi Duvall from Elmore is shown to have been made by and between these brothers, and thereafter they so listed for taxes their respective moieties or allotments as individual property. This parol partition of the lot between James and Levi Duvall occurred probably during the latter part of 1877, when the lands were assessed to "James and Levi Duvall, lot 1, Sq. 7, Goldthwaite plat, $450"; or before the assessment was made for 1878 as follows: "James Duvall, lot 1, Sq. 7, Goldthwaite plat, $500; Levi Duvall, west half of lot 1, Sq. 7, Goldthwaite plat, $300"; or before they assessed the same in 1881 as follows: "James Duvall, E. ½ of lot 1, Sq. 7, Goldthwaite plat, $300, and Levi Duvall, W. ½ of lot 1, Sq. 7, Goldthwaite plat, $200."

In Betts v. Ward, 196 Ala. 248, 72 South. 110, the subject of parol partition was con-

sidered at some length; and that authority was to the effect: (1) That oral partition of lands accompanied by possession will be enforced in equity; (2) that when such partition is followed by possession so long continued that the statute of limitation operates a bar, it vests in the former cotenant the legal title to the part of the land so assigned, of which he had possession; (3) that where the possession has been held by the former cotenants of their respective allotments of the land for more than 20 years, the presumption or partition arises.

There is no necessity to further discuss the questions of law considered in Betts v. Ward, supra, other than to say that we there quoted with approval from Goodman v. Winter, 64 Ala. 410, 430 (38 Am. Rep. 13), as follows:

"The partition or division simply designates the portion or share of the estate, real and personal, each devisee or legatee is entitled to hold in severalty under the will. The possession, with claim of exclusive title to the premises in controversy—exclusive, so far as the other devisees are concerned—by Mrs. Holcombe and those claiming under her for more than 20 years was sufficient evidence of a partition, or division, and of her title in severalty. * * * The presumption that there had been a division or partition, and the premises had been assigned to her, would arise. from the length of possession." McArthur v. Carrie, 32 Ala. 75, 70 Am. Dec. 529; Harrison v. Heflin, 54 Ala. 552.

In Miller v. Vizzard Investment Co., 195 Ala. 467, 70 South. 639, Mr. Justice Somerville said:

"The bill is filed for the purpose of effecting a sale for division of a certain tract of land which belonged to the father of the parties complainant and defendant. Their father died in 1877, and one son, A. I. Vanzandt, who was then living on the place with him, continued in the sole and exclusive possession, use, and enjoyment of the premises until his death in 1909. * * * The defendant, who is a daughter of A. I. Vanzandt, denies the allegation of the bill that she is a cotenant of complainants, and claims the exclusive ownership by prescriptive title in her father, and also sets up laches in the prosecution of complainants' rights. For the purposes of this case, it might be conceded that the evidence does not convincingly show such a disseisin of the complainants by defendant's father as would be required to set in motion the statute of limitations, although a contrary view seems to be approved in the case of Hamby v. Folsom, 148 Ala. 224, 42 South. 548. We think there can be no doubt, however, under the decisions of this court, and in line with the general current of judicial decision, that A. I. Vanzandt acquired an exclusive title to this land, as against his cotenants, under the doctrine of prescription and repose. Direct authority for this conclusion is found in the cases of Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212, and Kidd v. Borum, 181 Ala. 144. 161, 61 South. 100, Ann. Cas. 1915C, 1226."

The case at bar is stronger than that dealt with in the Miller Case, where it does not appear that the statute of limitations had begun to run against the ancestor. In the instant case appellee's testimony shows that, if there was no oral partition of the lot between the brothers, James and Levi Duvall, the statute of limitations began to run against Levi Duvall before his death, and in favor of James Duvall, and so continued after his death, to the time of the filing of the bill, for 25 years or more.

[1] On this phase of the case the burden of proof was shifted to complainants to show that the statute, beginning to run against their ancestor and immediate predecessor in title, was thereafter suspended; and complainants' testimony not only fails to do this, but tends to show that from an early date appellants and their predecessors in title had continuous, uninterrupted, and adverse possession of the east half of said lot, on which James Duvall had erected the four-roomed house excepting the right of way to the west half. Salmon v. Wynn, 153 Ala. 538, 544, 546, 547, 45 South. 133, 15 Ann. Cas. 478; Ala. Coal & Coke Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 550, 54 South. 685; Veitch v. Woodward Iron Co., 200 Ala. 358, 76 South. 124.

[2] The absence of parties at interest to the record in the lot of Levi Duvall, deceased—the west half of the lot in question, and as to which respondents disclaimed ownership—does not preclude a right determination of the fact of joint ownership of said complainants with respondents in the east half of the lot in question, and the right to maintain the bill filed in the instant case.

The decree of the circuit court is reversed, and decree is here rendered dismissing complainants' bill as to the east half of said lot; and the cause is remanded for further proceedings to a proper decree as to the west half of said lot, and the right of way from the street thereto, under the disclaimer of respondents to which we have heretofore adverted. This is in consonance with the rule of final submission declared in our recent statute, section 3212 of the Code. Teal v. Pleasant Grove Local Union, 75 South. 335;[1] Stewart v. Snider, 197 Ala. 129, 72 South. 409; Zadek v. Burnett, 176 Ala. 80, 57 South. 447.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.