142 So. 397

## GILB et al. v. O'NEILL et al.

### 6 Div. 12.

Supreme Court of Alabama.

May 26, 1932.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellants.

Harsh, Harsh & Hare and Frank S. White, Jr., all of Birmingham, for appellees.

**KNIGHT, J.**

It appears from the bill of complaint, as amended, that John W. O'Neill, deceased, father of John W. O'Neill, one of the respondents, purchased the N. W. ¼ of the N. E. ¼ of section 2, township 18, range 2 west, in Jefferson county, under a decree of the probate court of Jefferson county, which directed the sale of said land for the payment of the taxes due thereon to the state and county for the tax year of 1890. On June 6, 1893, the judge of probate of said county executed to the said purchaser a deed conveying to him the said tract of land. Thereafter, on December 19, 1894, the said John W. O'Neill, deceased, "obtained a deed from R. M. Buck and wife, conveying to him all their right, title and interest in and to the N. E. ¼ of the N. E. ¼ of Section 2, Township 18, Range 2 West," in said county. It is also made to appear from the bill that the said R. M. Buck acquired said property from Montgomery & Wadsworth, a partnership, who in turn had acquired the same by virtue of a deed executed by the judge of probate of Jefferson county, on sale of said tract of land for state and county taxes. It is then averred in the bill, as amended, that "subsequent" to the execution of said two deeds the said John W. O'Neill, the first, went into possession of said property and made improvements thereon, *and was seized and possessed of the property at the time of his death.* It appears also that the said John W. O'Neill, the first, died intestate in February, 1896, leaving surviving him, as his only heirs at law, his widow, Winifred J. O'Neill, and five daughters, and one son, the respondent John W. O'Neill. Annie O'Neill, one of the daughters, died intestate, without issue. Mary O'Neill, another daughter, married Valentine Gilb, and died thereafter, intestate, leaving her husband and the two complainants as her only heirs at law and distributees. The date of the death of Mary O'Neill Gilb nowhere appears in the bill, but it does appear therein that she survived her father, and died prior to the year 1912: therefore her death occurred at some undefined period of time between the years 1896 and 1912. Nor do the dates of birth of complainants appear in the bill, and the bill seems to studiously avoid making this proper and needed averment, in view of the demurrers twice filed to the bill presenting the question of laches.

The complainants on two separate occasions amended their bill, and the last amendment, instead of averring directly and positively the ages of the complainants, which could have been done in a few words, gives the court this information only as to the ages of complainants: "Complainants allege that, at the time of the death of their mother, complainant Winifred Gilb was eight years of age, and complainant Margaret Snider was six years of age, and less than ten years have elapsed since the complainants attained their majority and before the commencement of this suit."

The bill as last amended avers that: "Subsequent to the death of said John W. O'Neill, the first, his widow and son, the respondent, John W. O'Neill and his five daughters above mentioned, continued in possession of said property, each claiming title in possession with the others as tenants in common under and through the said John W. O'Neill, the first. Such possession as the said John W. O'Neill had in and to the said property was in connection with the possession of his mother and sisters and these complainants, and in recognition of their interests as heirs and distributees at law of said John W. O'Neill, deceased."

After demurrer was sustained by the court to the bill as originally filed, the complainants, who are grandchildren of John W. O'Neill, deceased, and children of the deceased daughter, Mary O'Neill Gilb, amended sections 5 and 6 of their bill of complaint. In

order to give a clearer view of the contention of complainants we will quote section 6 at length: "Your complainants further show that notwithstanding the facts above set forth, that on to-wit, the 19th day of October, 1912, the respondent John W. O'Neill, obtained a deed from Joe Bagley and wife Mandy Bagley, purporting to convey the land above described, which deed recited a consideration of $300.00, and is recorded in Volume 746 at page 152, Record Deeds, in the office of the probate judge of Jefferson County, Alabama; and on to-wit, the 9th day of October, 1912, the respondent John W. O'Neill, also obtained a deed from Amanda Hall, a widow, formerly Amanda Bagley, which deed also recited a consideration of $300.00, and purported to convey the lands above described, and is recorded in Volume 746 at page 159, Record of Deeds, in the office of the probate judge of Jefferson County, Alabama. Complainant alleges that while said John W. O'Neill and his wife Lizzie O'Neill are now claiming title to the property involved in this suit, under said deeds, they did not know of the existence of either of said deeds or that said John W. O'Neill and his wife Lizzie O'Neill claimed any right, title or interest in and to the property the title to which is involved in this suit, under the same, until subsequent to the 27th day of May, 1929, when they learned incidentally that said John W. O'Neill and wife Lizzie O'Neill had undertaken to sell the property above described to S. R. Benedict, W. E. Mitchell, A. C. Polk and George E. Blue, as herein more particularly set out, and did not know until subsequent to said date that either the said John W. O'Neill or his wife Lizzie O'Neill claimed any right, title or interest in and to said property except they knew that said John W. O'Neill claimed an undivided interest in said property as one of the heirs and distributees at law of the said John W. O'Neill, the first, and was entitled to the possession of said property along with the other heirs of said John W. O'Neill, the first."

It further appears from the bill as last amended that on the 15th day of February, 1923, the respondent John W. O'Neill executed a deed purporting to convey to his wife, respondent Lizzie O'Neill, an undivided one-half interest in and to the property described in the bill, together with other property, reciting a consideration of $5 and love and affection, and that said deed was recorded in volume 1194, at page 44, in the office of the judge of probate of Jefferson county, Ala., but the bill is silent as to the date on which the deed was filed for record.

In paragraph 8 of the bill, as amended, complainants aver that the respondents John W. O'Neill, and his wife, Lizzie M. O'Neill, executed a deed purporting to convey to the respondents, S. R. Benedict, W. E. Mitchell, A. C. Polk, and George E. Blue, the property described in the bill, in consideration of the sum of $20,000, $16,000 of which was paid in cash, and the balance evidenced by four promissory notes of $16,000 each, payable one, two, three, and four years after date, and secured by a mortgage on the property conveyed.

And in the ninth paragraph of the bill, the complainants aver that they had no notice or knowledge that the respondent John W. O'Neill had obtained the two deeds from Bagley and wife, and Amanda Hall, referred to in the bill, until after the execution of the deed by the respondents John W. and Lizzie M. O'Neill to Benedict and associates. The bill also avers that: "Complainants are informed and believe, and upon such information and belief allege that the respondents, Winifred J. O'Neill, Margaret O'Neill, Clara O'Neill, Valentine Gilb and Joseph F. Conway likewise had no knowledge that the respondent, John W. O'Neill, had obtained the deeds from Bagley and Hall, or if they did know of the execution of said deeds, they did not know that they were executed to the respondent John W. O'Neill alone, or that he claimed any interest in said lands other than as one of the heirs and distributees at law of said John W. O'Neill, and likewise had no knowledge of the deed from respondent John W. O'Neill to his wife." To the contrary, the complainants aver that since the death of John W. O'Neill, the father, "the said lands have been considered by all the heirs as their joint property."

The respondents John W. O'Neill and wife, and their grantees, S. R. Benedict, W. E. Mitchell, A. C. Polk, and George E. Blue, again demurred to the bill as first amended, and thereafter the complainants further amended the bill as previously amended, by adding at the end of paragraph 2 the following averment: "Complainants allege that, at the time of the death of their mother, complainant Winifred Gilb was eight years of age, and complainant Margaret Snider was six years of age, and that less than ten years have elapsed since the complainants attained their majority, and before the commencement of this suit."

Upon the filing of this last amendment, the respondents, John W. O'Neill and wife, and the said Benedict, Mitchell, Polk, and Blue again interposed their demurrers, and the court, upon submission thereon, sustained the same. The chancellor, as recited in his decree, was of the opinion that the bill of complaint could not be further amended to give it equity, and thereupon dismissed the same. It does not appear that complainants requested to be allowed to make further amendment. The order sustaining the demurrers and dismissing the bill was made on August 10, 1931.

The prayer of complainants' bill is that the court decree: (a) That the complainants

and the respondents Winifred O'Neill Gilb, Margaret O'Neill, Clara O'Neill, John W. O'Neill, Leonora Conway, Joseph F. Conway, and Valentine Gilb were tenants in common of the property described in the bill prior to the sale thereof by John W. O'Neill and wife to Benedict and associates; (b) that the title conveyed, or purported to have been conveyed, by the deeds executed to John W. O'Neill by Bagley and wife, and Amanda Hall, inured to the benefit of the complainants and to the respondent, heirs and distributees at law of John W. O'Neill, deceased; (c) that the court decree that the complainants and the respondent, heirs and distributees at law of John W. O'Neill, deceased, are entitled to share in the amount of money realized by the respondents John W. O'Neill and Lizzie O'Neill from the sale of said lands to the respondents S. R. Benedict and associates, including the amount paid in cash, and in the amount of deferred payments evidenced by said promissory notes and secured by mortgage upon the property described in the bill according to what their respective interests in said lands would have been if they had not been sold, and that judgment be awarded in favor of each of the complainants and each of the respondent heirs and distributees at law of said John W. O'Neill, deceased, against the said John W. O'Neill and Lizzie M. O'Neill for their respective interests in and to the money realized by them on the sale of said lands to said Benedict and associates; and (d) that the court impress a trust upon the notes and mortgage executed by said Benedict and associates to said respondents John W. O'Neill and wife, requiring the amount of the deferred payments to be paid as they mature to the complainants and the other heirs of said John W. O'Neill, deceased, as their several interests may be fixed and determined by the court. The complainants offer to do equity.

The demurrers to the bill as last amended, challenge the equity of the bill, taking the point that the complainants by their long delay are barred of any right they may have had to contribute to the reimbursement. to respondent John W. O'Neill for the amounts paid by him to Bagley and Hall, in acquiring their outstanding titles to the land, and thereby to avail themselves of the benefit of the acquisition of such outstanding titles.

It is urged in brief of appellees that the tax deeds were not sufficient to vest title to the land in John W. O'Neill, deceased, and consequently were insufficient to create in the heirs at law of said John W. O'Neill, deceased, a tenancy in common, upon his death, intestate. Confessedly, the title of the complainants to any interest in the land is rested upon their inheritance from John W. O'Neill, deceased, through their mother, who was his daughter.

We shall address ourselves first to a con- sideration of this last insistence of appellees for if there was no cotenancy between the heirs at law of the said John W. O'Neill, the whole case of complainants must fall. The theory of the complainants' bill is that their grandfather owned the lands at the time of his death, and that, inasmuch as he died intestate, upon his death, the lands descended to his heirs at law, as tenants in common, subject to the rights of the widow, the respondent Winifred J. O'Neill.

While the bill avers that John W. O'Neill purchased the N. W. ¼ of N. E. ¼ of section 2, township 18, range 2, in Jefferson county, Ala., at tax sale, and had acquired a deed thereto from the probate judge of that county on June 6, 1893, and while it also avers that he purchased this second tract on December 19, 1894, of R. M. Buck, who had acquired the same from Montgomery & Wadsworth, a partnership, and who had in turn acquired the property under a deed executed by the probate judge of Jefferson county, pursuant to a decree of sale of the lands for state and county taxes, yet the bill avers that "subsequent to the execution of said two deeds, the said John W. O'Neill, the first, went into possession of said property and made improvements thereon, and was *seized and possessed of the property* at the time of his death."

The term "seized and possessed" has a well-known legal signification, and when employed in the connection as set forth in the bill in this cause, it imports seized in fact, not mere seisin in law. Bragg v. Wiseman, 55 W. Va. 330, 47 S. E. 90. These words are sufficient to constitute an averment of ownership. 25 Cyc. p. 1371. The averments of the bill sufficiently show that John W. O'Neill died in the ownership and possession of the property, and it appearing that he died intestate, his heirs at law acquired the property by inheritance as tenants in common. This disposes, therefore, of the contention made by appellee that the bill does not show a tenancy in common of the property ever existed among the heirs at law of the said John W. O'Neill, deceased.

By their long delay in offering to contribute to the reimbursement of the respondent John W. O'Neill for the amounts expended by him in acquiring the outstanding titles of Bagley and Hall, were the complainants barred of their right to avail themselves of the benefit of the purchases of the outstanding titles of Bagley and Hall? This is the only question of moment in the case.

In 38 Cyc. p. 40, the equitable principle, involved in this case, and now asserted and relied upon by the complainants, is there broadly stated: "A tenant in common has the right to relieve the common property from a lien or encumbrance, and may make a valid tender of payment of the whole mortgage

debt on behalf of his cotenants, and acts of this nature done in relation to the general interest in the whole common property are presumed to have been done bona fide for the common benefit, and generally a purchase by a cotenant of an outstanding title being presumed to be for the benefit of all parties in interest is not void, passing title subject to the rights of other cotenants. But one tenant in common will not be permitted to inequitably acquire title to the common property, solely for *his own* benefit or to the exclusion of his cotenants, the general rule being that the purchase or extinguishment of an outstanding title to, encumbrance upon, or claim against the common property by one tenant in common inures to the benefit of all the co-owners, who may within a reasonable time elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim or the removal of the encumbrance from the common property."

It must be borne in mind that we are passing upon the sufficiency of the bill to state a case for equitable relief, and all facts well pleaded must, as against the demurrer, be taken as true. *The bill states a case showing a cotenancy as between the heirs of the deceased John W. O'Neill to have existed from the date of his death down to the time of the sale of the lands by the respondent John W. O'Neill and his wife to Benedict and his associates.* While the bill is silent as to the uses, if any, the lands were put to, or as to what improvements were made on the land, if any, and as to who paid the yearly state and county taxes thereon, yet it shows that the parties inherited the lands from their deceased father, and it avers that "since the death of said John W. O'Neill the said lands have been considered by *all of the heirs and distributees* at law of said John W. O'Neill, deceased, as their joint property." It further avers "that, the respondent, John W. O'Neill was the only son of said John W. O'Neill, and has had the trust and confidence of all the heirs and distributees at law of said John W. O'Neill, *but has never to the knowledge of complainants at any time claimed the exclusive right, title, possession or ownership therein.*"

In the case of Ashford et al. v. Ashford et al., 136 Ala. 631, 34 So. 10, 13, 96 Am. St. Rep. 82, it is said: "The law is well settled [in this jurisdiction] that the possession of one tenant in common is prima facie presumed to be the possession of all, and that it does not become adverse to the co-tenants unless they are *actually ousted*, or, short of this, unless the adverse character of the possession of one is *actually known* to the others, or the possession of the one is so open and notorious in its hostility and exclusiveness as to put the other tenants on notice of its adverse character."

In the case of Winsett v. Winsett, 203 Ala. 373, 83 So. 117, 119, it is said: "It may further be noted of the rules of cotenancy obtaining in this jurisdiction, applicable to the instant case, that, being in possession, a cotenant cannot change his tenancy without notice to the other cotenants (Alexander v. Wheeler, 69 Ala. 332, 340; Parks v. Barnett, 104 Ala. 438, 443, 16 So. 136; Ashford v. Ashford, 136 Ala. 631, 34 So. 10, 96 Am. St. Rep. 82; Walker v. Wyman, 157 Ala. 478, 47 So. 1011); for a cotenant out of possession may rest on the possession of a cotenant as being for all cotenants until an *actual ouster* is shown. The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. Coleman v. Coleman, 173 Ala. 282, 55 So. 827; Williams v. Avery, 38 Ala. 115, 118; Fielder v. Childs, 73 Ala. 567; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann. Cas. 1915C, 1226; McGuire v. Van Pelt, 55 Ala. 344. A redemption of the lands from mortgages and tax sales, or a purchase before the time for redemption has expired, and the discharge of other liens, will inure to the benefit of all cotenants therein. Bailey's Adm'r v. Campbell, 82 Ala. 342, 2 So. 646; Jackson v. King, 82 Ala. 432, 435, 3 So. 232; Howze v. Dew, 90 Ala. 178, 184, 7 So. 239, 24 Am. St. Rep. 783; Courtner v. Etheredge, 149 Ala. 78, 43 So. 368; Jones v. Matkin, 118 Ala. 341, 24 So. 242. However, if the cotenancy is destroyed, as by foreclosure and the expiration of the time for redemption, or by a sale for taxes and expiration of the time within which to redeem, or by a long-continued adverse and hostile possession of a tenant denying the title of his cotenant, and the knowledge of this hostile claim *actually known* to his cotenants, the rights of such cotenants are defeated. Coleman v. Coleman, supra; Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212; Smith v. Duvall [201 Ala. 425] 78 So. 803; Chavers v. Mayo [202 Ala. 128] 79 So. 594." (Italics supplied.)

In the case of Johns v. Johns, 93 Ala. 239, 9 So. 419, one of the tenants in common purchased at a tax sale, and the question presented for review in this court was whether the tenant, so purchasing, could defeat the rights of his cotenants, and secure by his purchase absolute title in himself, to the exclusion of his cotenants. In that case it appeared that nearly eleven years after the tax sale, nearly nine years after the tax deed was executed, and some five years after the death of the widow, the life tenant under testator's will—complainants and defendant were remaindermen, tenants in common—complainants filed their bill for a sale of the land for partition against their cotenant, purchaser at the sale, who had been in possession since the year of the tax sale. This court held in that case that the defendant could not defeat the rights of his cotenant by his purchase of the property; that he must

be content with the right the law gave him to require reimbursement for the amount paid by him at the tax sale, and was to be regarded as a trustee of the title for the equal benefit of all the cotenants.

In the case of Savage v. Bradley, 149 Ala. 169, 43 So. 20, 123 Am. St. Rep. 30, this court was called upon to deal with a case where one of the cotenants had purchased the common property at a tax sale, and in that case this court observed that the relation of cotenancy is a relation of confidence and trust, and that from such relationship presumptions of utmost favor to cotenants arise, to the end that the title and rights of each in the common property may be preserved.

In the case of Williams v. Massie, 212 Ala. 389, 102 So. 611, 614, in an opinion by Justice Sayre, this court committed itself to the pronouncement that the right which a cotenant has to participate in a purchase of the common property is an equitable right, and that a cotenant, in order to avail himself of the benefits of such purchase, must contribute or offer to contribute to the expense thereof within a reasonable time. In the case of Savage v. Bradley, supra, our court said: "That in ordinary cases, * * * by analogy to the term fixed for the exercise of the statutory right of redemption, two years is the limit of time within which election by a co-tenant should be made in order to avail himself of the redemptioner's act," but, as observed by Mr. Justice Sayre in the case of William v. Massie, supra, "the court, in view of the relation involved, refused to declare any inexorable rule, 'since in the very nature of the relation the conduct and condition of the co-owners might materially change the standard,' refused to declare 10 years to be a reasonable limit in all cases."

In 21 Corpus Juris, § 211, it is stated: "Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from *knowledge* of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another."

Judge Freeman, in his admirable work on Cotenancy (2d Ed.) § 156, uses the following language, in discussing the question now before the court: "The right of a cotenant to share in the benefit of the purchase of an outstanding claim is always dependent on his having, within a reasonable time, elected to bear his portion of the expense necessarily incurred in the acquisition of the claim. A most natural and material inquiry, then, is what is a reasonable time? To this inquiry no positive answer can be given. In this, as in all other questions in regard to reasonable time, no doubt each case must necessarily be determined upon its own peculiar circumstances. The cotenant asking a court of equity to award him the benefit of a purchase, must show reasonable diligence in making his election. Whatever delay he may have occasioned must be entirely consistent with perfect fair dealing on his part, and in no wise attributable to an effort to retain the advantage, while he shirks the responsibilities of the new acquisition."

In the case of Williams v. Massie, supra, Mr. Justice Sayre had this to say with reference to laches, after quoting approvingly the above from Judge Freeman: "We discover no objection to the 2-year rule announced in Savage v. Bradley [supra] in its application to ordinary cases, that is, to cases in which the parties are sui juris, competent, and the relevant facts are understood by all hands. But laches cannot within limits which do not affect this case be imputed to parties who are not informed of the adverse claim and the necessary propriety of asserting their right, for one very just definition of laches is 'an implied waiver arising from a knowledge of existing conditions and an acquiescence in them.' 21 C. J. 210. * * * Winsett v. Winsett, supra. 'Mere delay in the assertion of a right, without more, does not in itself constitute laches.'" Montgomery Light Co. v. Lahey, 121 Ala. 137, 25 So. 1006.

The appellees John W. O'Neill and Lizzie M. O'Neill insist that, inasmuch as the bill shows upon its face that John W. O'Neill had obtained deeds from Bagley and Hall in the year 1912, and that these deeds were put on record, it may properly be inferred that the deeds were filed for record upon the date of their execution, nothing appearing to the contrary in the bill; and that it may also be inferred that the deed from said John W. O'Neill to his wife, conveying one-half interest in the property, was filed for record on the day of its execution, nothing appearing to the contrary in the bill. The appellees John W. O'Neill and Lizzie M. O'Neill further take the position that the recordation of the above-mentioned deeds was sufficient to charge the complainants, appellants here, with constructive notice of the conveyances, and that this is so, notwithstanding the positive averments of the bill that complainants had no notice or knowledge of the execution of said conveyances. That, being thus charged with constructive notice of the execution of the deeds to John W. O'Neill since 1912, and of the deed from John W. O'Neill to his said wife since 1923, the long delay in the assertion of their

right to avail themselves of the benefit of the conveyances to said John W. O'Neill, by offering to make contribution to said John W. O'Neill for the amounts expended by him in acquiring the outstanding titles of Bagley and Hall, constitutes laches barring equitable relief. Of course, to be able to avail themselves of the benefits of the purchases, the complainants were under duty to make their election within a reasonable time.

By demurring to the bill, the demurrants admit all facts well pleaded, and among those facts is the unequivocal statement to the effect that since the death of John W. O'Neill, the father, the said lands have been considered by all the heirs and distributees at law of said John W. O'Neill as their joint property, and that the appellee John W. O'Neill has never, to the knowledge of complainants, at any time claimed the exclusive right, title, possession, or ownership therein.

It must also be borne in mind that the mother of the complainants, and who was a cotenant of the property, died prior to the acquisition by the respondent John W. O'Neill in 1912 of the deeds from Bagley and Hall; that at the time of the death of their mother the complainants were of the ages of six and eight years; and that the bill was filed less than ten years after complainants reached their majority, and within less than one year after they acquired knowledge of the Bagley and Hall deeds to the respondent John W. O'Neill, and the deed from the latter to his wife.

In view of the tenancy in common that existed, and of the relation of trust and confidence that springs from such a tenancy, and in view of the blood·ties between the said tenants in common, and of the trust and confidence that was reposed (as averred in the bill) in the said respondent John W. O'Neill by his sisters and nieces—he being the only male child of the said John W. O'Neill, deceased—it was not to be supposed that his sisters and nieces would, from day to day, scan the public records to see if their brother and uncle had filed an instrument for record, involving·adversely their rights in the lands. The existing relationship naturally tended to create a feeling of security and repose, rather than to excite vigilance and suspicion, and not until something appeared in the circumstances of the case to suggest overreaching on the part of their brother and uncle was a different attitude to be expected on the part of the cotenants of John W. O'Neill. The statute authorizing the recordation of deeds and other instruments and imputing constructive notice thereby was intended and designed to protect persons dealing with respect to the property in the exchange of title, and cannot be made the vehicle of depriving one tenant in common of his rights, by the machinations of another tenant in common, in an effort to cut off the rights of such other tenants in common *without actual notice.* Under the averments of the bill, nothing short of *actual* knowledge would suffice to put complainants in position where the statute of limitations or laches would begin to run against them. Ashford v. Ashford et al., 136 Ala. 631, 34 So. 10, 96 Am. St. Rep. 82; Palmer v. Sims et al., 176 Ala. 59, 57 So. 704. The bill, in most positive terms, negatives such knowledge until after the execution of the deed of the respondents John W. and Lizzie M. O'Neill to Benedict and associates.

It remains only to be said that Mrs. Lizzie M. O'Neill has no better standing in court than has her grantor. Ashford v. Ashford, supra; Williams v. Massie, supra.

The bill, as last amended, fairly construed, presents a case for equitable relief, and the chancellor committed error in sustaining the demurrers thereto, and in dismissing the same. The demurrers should have been overruled.

A decree will be here entered overruling the demurrers of all parties, and reinstating the cause upon the docket.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.