61 So.2d 75

## MARKSTEIN v. SCHILLECI et al.

### 7 Div. 53.

Supreme Court of Alabama.

June 19, 1952.

Rehearing Denied Nov. 6, 1952.

D. H. Markstein, Jr., Birmingham, for appellant.

Gibson & Hewitt and Edw. T. Rice, Birmingham, for appellees.

LIVINGSTON, Chief Justice.

This cause was submitted for final decree in the Circuit Court, in Equity, of St Clair County, on a substituted bill of complaint wherein Pauline Schilleci and Santo Giamalva were complainants and D. H. Markstein, Grief Brothers Cooperage Corporation, Ragland Heading Company, Vincent Schilleci and Leon (Leonard) Schilleci were respondents. The evidence was taken ore tenus before the trial court and resulted in a decree granting the relief prayed for, and from which decree this appeal is prosecuted. The bill sought the sale of certain described lands located in St. Clair County, for division, and an accounting.

The following facts, established by the evidence are sufficient for an understanding of this opinion.

During the year 1916, D. H. Markstein, Tony Schilleci and Jake Giamalva jointly purchased the lands here involved. Taxes were paid by the then owners of said land, in equal shares, from 1916 through 1929. In July 1931 the lands were sold for state and county ad valorem taxes for the year 1930, and purchased by the State of Alabama. The certificate of purchase was duly transferred to D. H. Markstein, and on August 9, 1933, the Judge of Probate of St. Clair County, executed and delivered to Markstein a deed conveying the lands to him. Since that time Markstein has assessed the lands for taxation and has paid the taxes. In October 1936 Markstein sold certain timber on said land to Ragland Heading Company, a subsidiary of Grief

Brothers Cooperage Corporation, for $1000. Markstein then sold the lands to Grief Brothers Cooperage Corporation in December 1943. Jake Giamalva died intestate in June 1925, leaving surviving his widow and one child, Santo Giamalva, who is one of the complainants. The widow of Jake Giamalva died intestate in June 1937. Tony Schilleci died in November 1942 leaving surviving his widow, Fannie Schilleci and three children, i. e., Vincent, Leon (Leonard) and Pauline. In December 1942 Vincent and Leon (Leonard) conveyed their interest in their father's estate to Fannie Schilleci, their mother. Fannie Schilleci died testate in 1948, and devised her interest in the property here involved to her three children, Vincent, Leon (Leonard) and Pauline.

The trial court held that, at the time D. H. Markstein sold timber to the Ragland Heading Company he, Markstein, was a tenant in common, owning an undivided one-third interest in the property and that his deed to the Ragland Heading Company conveyed only such interest, and that Markstein and the Ragland Heading Company was liable to the other tenants in common for such part of the $1000 paid for the timber as is proportionate to their fractional interest in said property, together with the interest thereon, at the legal rate, from the date of said sale. And, that at the time Markstein conveyed the lands to Grief Brothers Cooperage Corporation he was a tenant in common in and to said property, owning an undivided one-third interest therein, and that such conveyance conveyed only such one-third interest, and that, therefore, Grief Brothers Cooperage Corporation was the owner of an undivided one-third interest in the lands: that Santo Giamalva was the owner of an undivided one-third interest therein, and that the three children of Tony Schilleci, deceased, i. e., Vincent, Leon (Leonard) and Pauline owned the remaining undivided one-third interest in said lands, their specific interest being Pauline, an undivided five-twenty-sevenths interest in said lands, and Vincent and Leon (Leonard) each an undivided two-twenty-sevenths interest.

The decree further found that the lands could not be equally divided in kind, and ordered it sold for division. The court further decreed that Santo Giamalva, Pauline Schilleci, Vincent Schilleci and Leon (Leonard) Schilleci have and recover of D. H. Markstein and the Ragland Heading Company the sum of $1000, and interest, giving to each a judgment as is proportionate to their fractional interest in the property. Only Markstein appealed.

 It has long been the rule in this jurisdiction that when a tenant in common purchases an outstanding title to property, the title passes to the purchaser subject to the rights of other cotenants. One tenant in common will not be permitted to inequitably acquire title to the common property, solely for his own benefit or to the exclusion of his cotenants, the general rule being that the purchaser or extinguishment of an outstanding title to, encumbrance upon, or claim against the common property by one tenant in common inures to the benefit of all the co-owners, who may within a reasonable time, elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim or the removal of the encumbrance from the common property. Johns v. Johns, 93 Ala. 239, 9 So. 419; Gilb v. O'Neill, 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526; Sherrill v. Sandlin, 232 Ala. 389, 168 So. 426; Gordon v. McLemore, 237 Ala. 270, 186 So. 470. This principle applies where a tenant in common is assigned the certificate of purchase of lands purchased by the State at tax sale. Donnor v. Quartermas, 90 Ala. 164, 8 So. 715. And it is immaterial whether the tax sale is void or valid. Authorities supra.

 Appellant insists that he acquired title to the property here involved by adverse possession. But the possession of one tenant in common is presumed to be possession of all cotenants. Gilb v. O'Neill, supra; Ashford v. Ashford, 136 Ala. 631, 34 So. 10; Winsett v. Winsett, 203 Ala. 373, 83 So. 117, 119. It was said in the Winsett case:

"It may further be noted of the rules of cotenancy obtaining in this jurisdiction, applicable to the instant case, that,

being in possession, a cotenant cannot change his tenancy without notice to the other cotenants (Alexander v. Wheeler, 69 Ala. 332, 340; Parks v. Barnett, 104 Ala. 438, 443, 16 So. 136; So. 10, 96 Am.St.Rep. 82; Walker v. Ashford v. Ashford, 136 Ala. 631, 34 Wyman, 157 Ala. 478, 47 So. 1011); for a cotenant out of possession may rest on the possession of a cotenant as being for all cotenants until an actual ouster is shown. The mere fact that a cotenant in possession has taken all the rents and profits does not show ouster of his companions. Coleman v. Coleman, 173 Ala. 282, 55 So. 827; Williams v. Avery, 38 Ala. 115, 118; Fielder v. Childs, 73 Ala. 567; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann.Cas. 1915C, 1226; McGuire v. Van Pelt, 55 Ala. 344. A redemption of the lands from mortgages and tax sales, or a purchase before the time for redemption has expired, and the discharge of other liens, will inure to the benefit of all cotenants therein. Bailey's Adm'r. v. Campbell, 82 Ala. 342, 2 So. 646; Jackson v. King, 82 Ala. 432, 435, 3 So. 232; Howze v. Dew, 90 Ala. 178, 184, 7 So. 239, 24 Am.St.Rep. 783; Courtner v. Etheredge, 149 Ala. 78, 43 So. 368; Jones v. Matkin, 118 Ala. 341, 24 So. 242."

See also Swafford v. Brasher, 246 Ala. 636, 22 So.2d 24; Hames v. Irwin, 253 Ala. 458, 45 So.2d 281.

■ Apparently conversant with the foregoing principles, appellant, in an effort to bring himself within their protection, offered to testify to certain conversations with Tony Schilleci during his lifetime and after the tax sale. This offer of proof was the only attempt made by appellant to show knowledge on the part of his cotenants, or their heirs, that appellant was claiming the full title to the property as against them. The conversations clearly fall within prohibitions of Title 7, § 433, Code of 1940, the so-called dead man's statute, and cannot be testified to by the surviving party. There is nothing in the conduct of appellant, as testified to by him, which can be construed as an ouster of his cotenants. The payment of taxes alone and the sale of timber, the proceeds of which appellant kept for himself is not sufficient for that purpose. Winsett v. Winsett, supra; Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259. Nor does the recordation of the tax deed of appellant and the deed of appellant to Grief Brothers Cooperage Corporation serve such purpose. Gilb v. O'Neill, supra; Swafford v. Brasher, supra.

■ Appellant further contends that, although the purchase by him of the tax title inures to the benefit of his cotenants, there is a limitation on that principle to the effect that the other cotenants must, in a reasonable time, contribute their proportionate share of the expense in acquiring such title, and that in the case at bar his cotenants have not so contributed for such a length of time as to be barred by laches. This contention is also answered in the Gilb v. O'Neill case supra. In that case seventeen years elapsed before suit was brought,—here fourteen years. It was there held that although two years had been fixed as a reasonable time within which contribution must be made, such time limitation does not begin to run until the cotenants have actual knowledge of the acts of the cotenant. Of similar import are Williams v. Massie, 212 Ala. 389, 102 So. 611; Johns v. Johns, supra; Kidd v. Borum, 181 Ala. 144, 61 So. 100. Appellant must show his cotenants or those from whom they claim had actual knowledge of the rights claimed to be lost by laches. This he did not do.

Appellant also relies on the three years statute of limitations. The argument is fully answered by what has been said above.

We find no error to reverse and the case is accordingly affirmed.

Affirmed.

BROWN, FOSTER and SIMPSON, JJ., concur.