149 So.2d 283

**Kenneth BEASON et al.**

v.

**Lula Beason BOWLIN et al.**

**7 Div. 505.**

Supreme Court of Alabama.

Nov. 29, 1962.

Rehearing Denied Feb. 7, 1963.

Frank B. Embry, Pell City, for appellants.

Starnes & Holladay, Pell City, for appellees.

PER CURIAM.

Complainants, Lula Beason Bowlin, Manley V. Beason, and R. L. Beason, adult children of John L. Beason, who died in November, 1945, and his wife, Sally M. Beason, who died in 1938, filed their bill in the circuit court of St. Clair County, in equity, to sell for division among the joint owners certain lands specifically described in the complaint, there and here referred to as Tracts 1 and 2.

The complaint made certain grandchildren and great grandchildren of John L. and Sally M. Beason parties respondent, along with Tellie Mostiller, Erskin Mostiller and Sennie Hampton, who are not members of the Beason family, but alleged to be successors in title to Tract 2 described in the complaint.

During the progress of the trial it was stipulated and agreed in open court between the parties, through their respective solicitors of record, that title to the land, the subject matter of this suit, was in August Montgomery, who died intestate sometime after the Civil War between the States, leaving surviving three children, by name, Albert J. Montgomery, Mrs. Fannie Hill and Mrs. Sally M. Beason, the latter being the grandmother and great grandmother of some of the respondents, and the mother of complainants as noted above.

It was further stipulated that John L. Beason, husband of Sally M. Beason, acquired by appropriate conveyances, the each one-third interest of Albert J. Montgomery and Mrs. Fannie Hill, thus, owning without question at the time of his death, said acquired interests in both tracts.

The contested issue in this case is the ownership in 1938, and subsequently until now, the one-third interest of Sally M. Beason, which she inherited from her father, Augustus Montgomery.

The respondents by answers and cross-bills assert that John L. Beason was the owner exclusively of both tracts when he died in 1945. They predicated such claim of ownership on adverse possession against his wife with whom he lived until her death in 1938; also, they contend that John L. Beason devised Tract 2 to his grandson, Kenneth Beason, who, in turn, conveyed to appellants Tellie Mostiller, Erskin Mostiller and Sennie Hampton. The other appellants here claim exclusive ownership by virtue of a devise from their father, James S. Beason, who, in turn, claimed exclusively by will from his father, John L. Beason, the father of complainants. The appellants, if we may broadly state, claim exclusive title to the controverted interest of Mrs. Sally Beason by will, adverse possession as against complainants and other co-owners, and by laches and estoppel, of which they charge the complainants with guilt to the injury of appellants and the other respondents.

The trial court rendered a final decree in favor of complainants and ordered the lands sold in accordance with the prayer for relief. The decree defined the interests of all parties to the lands. The effect of the decree was a judicial determination that Mrs. Sally Beason, at the time of her death, had never parted with title to the one-third interest she inherited from her father, Augustus Montgomery, and that the respondents had never acquired by will, or otherwise, more than their pro rata share as remaindermen in the one-third interest of Mrs. Sally Beason.

Chief Justice Brickell, speaking for the Court in the case of Wells v. American Mortgage Company of Scotland, 109 Ala. 430, 445, 20 So. 136, 142, said:

"* * * And it must be observed that all possessions are presumed to be rightful,—friendly, not hostile to the true title; the presumption casting upon whoever may assert an adverse possession the burden of proof. * * *"

It is without serious dispute in the evidence that John L. Beason and his wife, Sally M. Beason, occupied Tracts 1 and 2, described in the bill, during the lifetime of Mrs. Beason, who, as we have said, died in 1938. If it be conceded that the husband, under any circumstances, can acquire lands of his wife by adverse possession, he certainly cannot do so by having joint possession with her. One of the essential elements of adverse possession is that the possession must be exclusive. "Two persons cannot hold the same property adversely to each other at the same time." Hinton v. Farmer, 148 Ala. 211, 213, 42 So. 563, 564, 121 Am.St.Rep. 63; Stiff v. Cobb, 126 Ala. 381, 386, 28 So. 402, 85 Am.St.Rep. 38; Wells v. American Mortgage Company of Scotland, supra.

After the death of his wife, John L. Beason continued to occupy Tracts 1 and 2 until his death on November 20, 1945. This he had a right to do under the law giving the husband the use of his wife's realty, if she dies intestate, as here. Title 16, Section 12, Code of Alabama, 1940.

A question presented for determination is whether or not Mr. John L. Beason's possession of his wife's interest in the two tracts, after her death in 1938 and until his death in 1945, was hostile to the heirs or remaindermen, and if so, was such hostility actually communicated to the joint owners, or imputed to them.

The possession of Mr. Beason under his statutory right of occupation after the death of his wife is not adverse. White v. Williams, 260 Ala. 182, 69 So.2d 847(10).

This court held in the case of Trufant v. White, 99 Ala. 526, 535, 13 So. 83, 86:

"* * * Where there are no relations between the owner and the party in possession,—nothing upon which the possession can be referred to the owner's right,—he is presumed to know of its wrongful character, knowing, as he must, of the fact of possession; but where a relation does exist upon which the possession is referable to the title,

the holder of that title is justified in assuming that the possession is subordinate thereto, and held in recognition thereof, until he knows to the contrary. No kind or degree of actual hostility will of itself convert such a permissive into an adverse possession; no sort of claim of ownership on the part of the party in possession will of itself have this effect; and while it may be open to the jury in some cases to find from the circumstances of the possession that the owner had notice of its hostile and exclusive character, no exclusiveness of possession, no hostility, no claim of right antagonistic to the title, will *necessarily* in any case take the place of direct proof of knowledge on the part of the owner that the possession is no longer held in subserviency to him. At most, in any case, the circumstances of hostility, exclusiveness and claim of right are only for the jury to consider as *tending* to show knowledge on the part of the owner; the argument being that the circumstances of the possession were such as that he *must have known them,* and from them that the possession was no longer held under him, and in recognition of his title. [Citing cases] * * *"

In the case of Foy v. Wellborn, 112 Ala. 160, 165–166, 20 So. 604, 605, it is succinctly observed:

" * * * 'The widow remains in the mansion house and occupies the plantation by the sufferance of the heir, or those claiming under him. Her possession is in no sense hostile or adverse to either.' * * * Not disturbing it, her possession was essentially permissive, and will be regarded as so continuing, unless disclaimed by declarations or acts unmistakably hostile, —*the equivalent of an abandonment or termination of the quarantine,* of which the heirs had notice or knowledge, or which were so open and notorious that notice or knowledge must be imputed to them." [Emphasis supplied.]

Pertinent to the inquiry here as to what acts and declarations of Mr. John L. Beason would be necessary to change his permissive occupancy under the statute to one of hostility, our cases have held:

"We need not state any affirmative rule as to what, on the part of the widow having such right (quarantine), will convert her presumptively subordinate possession into one adverse to the title. Doubtless a divestiture of her dower right, as by a release to the heir or tenant, or other act *amounting to a relinquishment of dower, brought to the notice of the legal owner,* would enable her thereafter to set up a possession which would be so adverse, and to perfect and prove ownership thereunder according to the usual rules. But, *so long as the right of quarantine accompanies her possession, it excludes the owner's right to the possession, and is sufficient to defeat any action he might bring therefor.* While such is the status of the parties, no mere claim or assertion of ownership, however often and openly made, would start the statute of limitations to run against the owner, to whom the right of entry and the cause of action has not accrued." [Emphasis supplied.] Robinson v. Allison, 124 Ala. 325, 329, 330, 27 So. 461, 463, and cases cited in Bishop v. Johnson, 242 Ala. 551, 7 So.2d 281.

■■ We concur with the trial court, after reading the evidence, that John L. Beason did not, after his wife's death, hold adversely to complainants. No evidence was adduced by respondents, who had the burden of proof, that could reasonably sustain their contention of adverse possession or that Mr. Beason's permissive occupancy under the statute had been abandoned or converted into one of hostility to the respondents. The acts of Mr. Beason in his permissive use of the property were reasonably consonant with his occupancy as a life tenant.

Therefore, Kenneth Beason took no part of his grandmother's interest in Tract 2

by devise from his grandfather, John L. Beason, the permissive occupant. He had nothing to will except his own two-thirds interest in this tract.

 The evidence shows that Kenneth Beason, pursuant to the devise of his grandfather went into possession of Tract 2, and remained in such possession for a period of years. We can find no satisfactory evidence that his possession was hostile or adverse to the rights of appellees and the other remaindermen in his grandmother's one-third interest. His successors in title, appellants here, are not shown to have gone into possession as we have been able to find. If stipulated by inference, there is no evidence that such possession was adverse or hostile.

Appellants, the devisees of Tract 1 in the will of their father, James S. Beason, contend he acquired title by adverse possession subsequent to the death of the testator, John L. Beason.

We have examined the will of John L. Beason offered as an exhibit, and find that the testator willed to his son, James S. Beason, father of the appellants-respondents " * * * all the land that I *own* West of the Highway * * *" [Emphasis supplied], which, according to the testimony is Tract 1.

 We have concluded here that John L. Beason never acquired title to his wife's one-third interest, before or after his wife's death. Therefore, his will, worded as it is and confining the devise to the land that he owned, devised no property that he didn't own, which was his wife's one-third interest in Tract 1.

Did Mr. James S. Beason's possession after the death of his father in November, 1945, without color of title by will, ripen into adverse possession of the one-third interest of Mrs. Sally Beason to the exclusion of the other joint owners and remaindermen? We think not.

This suit was filed on April 3, 1959, which was thirteen years and approximate-ly five months after the death of John L. Beason. James S. Beason became the executor of his father's will and made two conveyances in his fiduciary capacity of real property left by his father, and one in his individual capacity. None of these conveyances purported to convey any part of Tract 1 or 2 described in this cause. He assessed Tract 1 for taxes from 1945 through 1946. The record is silent so far as we have observed as to assessments for subsequent years.

 Even if these conveyances described part of Tract 1, the recordation thereof imputing constructive notice under the statute could not be relied on by one tenant in common to deprive another cotenant of his rights without actual notice. Gilb v. O'Neill, 225 Ala. 92, 142 So. 397(7), 85 A.L.R. 1526.

Herschel Montgomery, a witness for appellants, testified that James S. Beason went into possession of the lands involved here after the death of his father; that he claimed to own the lands; that he lived there and that was all he knew.

Mrs. Kate Hodges, estranged wife of John S. Beason, with whom she had not lived for 20 to 25 years, testified for appellants that her former husband lived on Tract 1 at the time of his death; that she (not her husband) cut some timber after the death of James S. Beason from the lands and sold it for $800.00. Further she stated that Mrs. Sally Beason told her that she had given her interest in the land to her husband, John L. Beason.

 If this statement attributed to Mrs. Sally Beason, assuming it to be true, could be construed that she had conveyed the land to her husband, it did not meet the demands of Title 47, Section 22, Code of Alabama, 1940, which provides the manner in which conveyances must be made. We do not construe the statement to mean more than that Mrs. Beason was letting her husband manage the lands.

We again concur with the trial court that the evidence does not sustain the bur-

den cast on appellants and respondents to establish that James S. Beason's possession, after his father's death, was hostile or adverse to the remaindermen in their rights to the one-third interest of Mrs. Beason, nor do we think they have any title thereto except as joint owners along with the other heirs of Mrs. Beason.

■ The respondents and appellants having failed to establish hostile possession with the other elements of adverse possession as against complainants (appellees here), and the evidence being insufficient, if any at all, of actual notice as required by law to the complainants of any claim of hostile possession, the latter cannot be charged with laches.

The existing family relationship tended to create "a feeling of security and repose," rather than exciting a necessity to act as would be the case if something appeared in the circumstances of the case "to suggest overreaching on the part" of appellants or those under whom they claim. Gilb v. O'Neill, 225 Ala. 92, 142 So. 397(8), supra; Williams v. Massie, 212 Ala. 389, 102 So. 611(8); Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75(5).

Also, it has been held from time to time that the possession of one tenant in common is presumed to be the possession of all cotenants. Markstein v. Schilleci, (2), supra.

■ As was observed by this court, in the case of Parrish v. Davis, 265 Ala. 522, 524, 92 So.2d 897(2–4), trial of this case was had before the court without a jury. Part of the evidence was heard orally and part of it was in the form of depositions, and part by stipulations. "In this situation our review is guided by the settled rule that the finding of the trial court, when testimony is taken orally before it, or partly so, has the effect of a jury's verdict and will not be disturbed unless plainly and palpably wrong."

Our view of the evidence in this case is in harmony with the view of the trial court. We think the case should be affirmed and it is so ordered.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, MERRILL, and COLEMAN, JJ., concur.