This appeal concerns title to property among the descendants of Henry Clay Finley. Appellants filed this suit to recover proceeds of timber cutting by some of the appellees. A settlement fund consisting of these proceeds and the interest thereon has been held in escrow pending the outcome of this case. The trial court determined that the appellants have no interest in either the property or the settlement fund.
Appellants raise essentially two allegations of error: that the trial court erroneously reformed a deed, and that the trial court erroneously failed to impose a constructive trust in favor of the appellants on an interest in the land previously owned by the appellants' predecessor in interest.
Henry Clay Finley died intestate in 1905 owning 220 acres in Shelby County and survived by fourteen children, who inherited fractional shares of the 220 acres as tenants in common. Henry Clay Finley's children included Nathan B. Finley, H.A. Finley, James L. Finley, and A.P. Finley. All fourteen children have since died intestate. Appellants are the widow (Elzirah P. Finley) and children (Clay Pearson Finley, Sr., Elzirah Finley Drake, Elvirah Finley, and James M. Finley) of James L. Finley. The appellees are descendants of Henry Clay Finley's other children.
Prior to 1920, H.A. Finley acquired the interest of Nathan B. Finley in the subject property. On November 19, 1920, H.A. Finley and his wife conveyed to Laura J. Pearson, the mother of appellant Elzirah P. Finley, a one-sixth interest in the property.[1] On December 31, 1926, Laura J. Pearson and her husband reconveyed to H.A. Finley a one-sixth interest in one hundred twenty acres of the property, leaving Laura J. Pearson as the record holder of title to a one-sixth interest in one hundred acres of the property. Referring to this one-sixth interest in one hundred acres, the trial court found as follows:
 "The Court finds that neither Laura J. Pearson nor her heirs ever claimed this land, nor assessed said property in her name nor her heirs and the Defendants held out to the world it was their land. The Court finds that Laura J. Pearson intended to convey this land to the Defendants but inadvertently and not according to intention it was left out of the conveyance."
Elzirah P. Finley appeals from this reformation of her mother's deed.
The court's judgment sets out the fractional interests owned by the descendants of Henry Clay Finley without mentioning James L. Finley's widow or children (plaintiffs/appellants) and thus determines they have no interest in the property. In addition to Elzirah P. Finley's claim to an interest in the property as an heir of her mother, the appellants claim an interest inherited from James L. Finley. The following facts trace James's interest. *Page 1021 
On March 5, 1929, A.P. Finley mortgaged his interest in the property to I.C. Justice and H.R. Justice. I.C. Justice foreclosed and bought A.P.'s interest at a foreclosure sale on October 11, 1929. On November 13, 1929, I.C. and H.R. Justice sued James L. Finley to recover on nine promissory notes made by A.P. Finley, the payment of which had been endorsed and guaranteed by James L. Finley. Default judgment for $247.60 was entered against James L. Finley; his interest in the subject property was levied upon and sold to I.C. Justice in August 1932. In February 1944, A.P. Finley repurchased from the heirs of I.C. Justice for the sum of $200.00 the interests in the subject property previously owned by A.P. Finley and James L. Finley. Appellants assert that A.P. acquired James's interest in trust.
Regarding the deed reformation issue, the appellants correctly cite the law that "the party opposing the instrument must produce evidence that is clear, convincing, and satisfactory, which proves that the deed does not truly express the intention of the parties." Pinson v. Veach, 388 So.2d 964,966 (Ala. 1980); Adams v. Adams, 346 So.2d 1146 (Ala. 1977);Mid-State Homes, Inc. v. Anderton, 291 Ala. 536, 283 So.2d 426
(1973). They contend that this burden has not been met and the trial court erred in reforming the deed.
Henry Clay Finley purchased the subject property in six separate parcels. H.A. Finley deeded his interest in all six parcels to Laura J. Pearson. Laura J. Pearson deeded her one-sixth interest in three of the parcels back to H.A. Finley. Leaving aside any questions as to the dead man's statute barring any testimony against Laura J. Pearson's estate — no issue is raised against such evidence — we agree that the evidence does not support a reformation of Laura J. Pearson's deed. Indeed, the appellees' argument in favor of the reformation consists chiefly of quoting the trial court's finding that neither Laura J. Pearson nor her heirs ever claimed any of the property and arguing that this finding is not to be disturbed under the ore tenus rule.
The appellees, contending that the deed did not truly reflect the intention of the parties, had the burden of proving by clear, convincing, and satisfactory evidence that Laura J. Pearson intended to reconvey all of the property to H.A. Finley. This they did not do. The evidence was in conflict as to whether Laura J. Pearson or her heirs claimed the property. Indeed, there was no evidence regarding Laura J. Pearson at all. Elzirah Finley, Mrs. Pearson's daughter, testified that she regarded herself as owning a share in the property. For example, she testified that on one occasion at an unspecified date she stopped some men from removing sand from the property because "I didn't know anything about it being sold, and that I was an heir."
The appellees make much of the fact that Elzirah Finley and her children did not farm the property after James L. Finley's death. The record shows that these children were infants when their father died, and they moved with their mother to the nearby town of Vandiver, where several of Henry Clay Finley's children lived. After the early 1950's, none of the cotenants of the Finley estate lived on or farmed the property. The land was used mostly for hunting in recent years. Appellees argue that they paid the taxes on the land with no contribution from Laura J. Pearson or her heirs, but just as this cannot suffice for adverse possession against a cotenant, Markstein v.Schilleci, 258 Ala. 68, 61 So.2d 75 (1952), it does not suffice to prove that Laura J. Pearson and her heirs claimed no interest.
The evidence was contradictory and vague as to who claimed what interest in the subject property. It thus does not clearly, convincingly, or satisfactorily support a finding that Laura J. Pearson intended to convey the entire interest she had received from H.A. Finley back to him in spite of the recitation of her deed that she only conveyed her one-sixth interest in 120 of the 220 acres. The trial court's holding to the contrary is therefore reversed.
We next must address the appellants' contention that the trial court erred in holding *Page 1022 
that they were not entitled to an interest in the subject property as heirs of James L. Finley. The trial court viewed the appellants as claiming that A.P. Finley redeemed his and James's interest by the purchase in 1944 from I.C. Justice's heirs:
 "It is contended by Plaintiffs that the repurchase by Albert Prince Finley from I.C. Justice of the interests in and to the Subject Property previously held by Albert Prince Finley and James L. Finley effected an equitable redemption of the interest in said property previously owned by James L. Finley and said purchase inured to the benefit of the heirs at law of James L. Finley and that title to the interest previously owned by James L. Finley is now held by the heirs of Albert Prince Finley in trust for the heirs of James L. Finley. However, any alleged equitable redemption, if it existed, came too late, since more than one year had elapsed from the time of execution of Sheriff's deed."
(Emphasis added.)
Appellants contend that this holding misconstrues their argument, that they did not argue that A.P. Finley redeemed James's interest, but rather asserted that A.P. acquired James's interest subject to a constructive trust. They assert that this is so because James merely promised to answer for A.P.'s debt, and it was this debt on which I.C. Justice sued James and levied for execution on his cotenancy interest in the subject property. They argue that A.P.'s reacquisition of the two brothers' fractional shares was analogous to the extinguishment of an outstanding interest against the property by one tenant in common.
Appellants cite Gilb v. O'Neill, 225 Ala. 92, 142 So. 397
(1932), as holding that one tenant in common may not purchase an outstanding interest solely for his own benefit to the exclusion of his cotenants. While we agree that this is the law, we point out that the Court in Gilb concluded the general statement of the law by stating that the cotenants "may withina reasonable time elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim or the removal of the encumbrance from the common property."Id., 225 Ala. at 96, 142 So. 397.
In Gilb the Court held that the cotenants, who were minors at the time the outstanding interest was acquired and had reached their majority less than ten years prior to filing suit, were not barred by laches from contributing to the purchase price of the outstanding interest and having the purchase inure to their benefit. Appellants herein assert that they were under no duty to contribute to A.P. Finley's repurchase of the Justices' outstanding interest because the outstanding interest arose from a charge against A.P. Finley. While this may be the case, we do think the principle of Gilb holds, that the cotenants must elect to avail themselves of the benefit within a reasonable time.
Any claim by the appellants to an interest in the property was equally attributable to Laura J. Pearson's share as to James L. Finley's share, at least so long as the Henry Clay Finley heirs maintained the informal relations of cotenancy which persisted to recent times. With A.P.'s purchase of the two shares from the Justice heirs coming twelve years after the execution against James's interest, equity and good conscience would require James's heirs to establish their claim to a constructive trust within a reasonable time, rather than thirty-five years later and long after A.P.'s death. All of James's children would have reached majority by 1953, twenty-one years after his death, and they brought this suit twenty-five years later.
Thus, although the trial court based its holding on the failure of an equitable redemption, we find that its decision is supported on the basis of laches, and we affirm.
The judgment of the trial court is affirmed as to the James L. Finley interest, reversed as to deed reformation regarding the Laura J. Pearson interest, and remanded for further proceedings consistent with this opinion. *Page 1023 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and EMBRY, JJ., concur.
[1] The trial court's order treats the children as having 1/12 interests at the time of this conveyance; apparently two children had died without issue and thus Nathan's plus H.A.'s interest totalled 1/6.