# Johns v. Johns.

*Bill in Equity between Tenants in Common, for Sale of Lands for Distribution, and Account of Rents and Profits.*

| | |
|---|---|
| 93 | 239 |
| 100 | 501 |
| 93 | 239 |
| 103 | 620 |
| 93 | 239 |
| 106 | 610 |
| 93 | 239 |
| 128 | 179 |
| 128 | 183 |
| 93 | 239 |
| 132 | 608 |

1. *Sale of lands for partition, or equitable division, among tenants in common.*—Under statutory provisions now of force (Code, § 3262), the Chancery Court has concurrent jurisdiction with the Probate Court to sell lands for partition, or equitable division, among several tenants in common; a jurisdiction created by statute, and formerly vested only in the Probate Court.

2. *Same; establishing title at law.*—When the defendant claims under a tax-deed which is regular on its face, and the recitals of which are not contradicted, while the complainants assert an equitable right to have him declared a trustee of the legal title for their equal benefit, claiming that they were all tenants in common with him when he bought at the tax-sale, it is not necessary that they should first establish their title at law.

3. *Purchase at tax-sale by one tenant in common.*—If one of several tenants in common in remainder becomes the purchaser of the lands at a sale for delinquent taxes before the termination of the life-estate, a court of equity will hold him a trustee of the legal title for the benefit of his co-tenants, and as such liable to account for rents and profits, but entitled to reimbursement.

4. *Adverse possession as between tenants in common.*—As between tenants in common, actual occupancy by one, exercise of acts of ownership, and improvements erected on the property, may co-exist without establishing an adverse possession as against the others. Eviction, denial of the right to enter, or exclusive claim of the right to occupy, must be shown, and notice thereof to the other tenants, before the possession becomes adverse, or the statute of limitations begins to run against them.

5. *Taxes, repairs, and improvements during life-estate, as between remainder-men.*—On the statement of an account between tenants in common in remainder, one of whom became the purchaser of the lands at a sale for delinquent taxes during the continuance of the life-estate, and is declared a trustee of the legal title for the equal benefit of the others, they can not charge him with rents and profits during the further continuance of the life-estate, but can only claim

[Johns v. Johns.]

that the lands shall pay their own expenses during that period, including taxes paid and necessary repairs; and he is also entitled to a credit for permanent improvements erected by him during the continuance of the life-estate, not at the cost of their erection, but at the increased value thereby imparted to the land when the life-estate terminated.

APPEAL from the Chancery Court of Cleburne.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 22d February, 1889, by George D. Johns, Erastus S. Johns, and Mrs. Mary A. Boyd, against William J. Johns, Thos. J. Johns, and George W. Cook; and sought a sale of certain lands for partition among the several parties as tenants in common, on the ground that they could not be equitably divided without a sale, and an account of the rents and profits. The chancellor dismissed the bill on final hearing, but without prejudice, and his decree is here assigned as error.

MERRILL & BRIDGES, for appellant, cited *Weare v. Van Meter*, 20 Amer. Rep. 616; *Hudson v. Coe*, 1 Amer. St. Rep. 288; *Page v. Branch*, 2 Amer. St. Rep. 281; 5 Bac. Abr. 279; 1 A. & E. Encyc. Law, 233, § 8; *Johnson v. Smith*, 70 Ala. 108; *Bailey v. Campbell*, 82 Ala. 342; *Fallon v. Chidester*, 26 Amer. Rep. 164; 4 Kent's Com. 370; *Allen v. DeGroot*, 14 Amer. St. Rep. 626, note; *Ormond v. Martin*, 37 Ala. 578; *Bolling v. Smith*, 79 Ala. 535; *Oliver v. Robinson*, 58 Ala. 46; *Childress v. Calloway*, 76 Ala. 128; Desty on Taxation, 938; 7 N. Y. 523; 77 N. C. 157; 44 Ill. 397.

AIKEN & BURTON, *contra*, cited *Jones v. Randle*, 68 Ala. 258; *Pugh v. Youngblood*, 69 Ala. 296; *Thorington v. City Council*, 88 Ala. 548; *Ladd v. Dubroca*, 61 Ala. 25; *Ballard v. Johns*, 84 Ala. 70; *Sheppard v. Sheppard*, 87 Ala. 560; *McEvoy v. Leonard*, 89 Ala. 455; *Phillips v. Threadgill*, 37 Ala. 93; Story's Equity, § 653, note; *Quarles v. Campbell*, 72 Ala. 64.

STONE, C. J.—The complainants, three in number, and the defendant William J. Johns, together with others not sued, were tenants in common of the tract of land described in the bill. The title accrued to them under the will of Thomas Johns, Sr., who died in 1870. Wm. J. Johns was named executor in the will, but he never qualified as such. The will was regularly probated and established in Cleburne Probate Court, soon after testator's death. No question is raised on the validity of the will, nor is it denied that the tes-

tator owned the lands at his death.   All the parties originally claimed title under Thomas Johns, the testator.

Under the will of Thomas Johns, his surviving widow took a life-estate, unless she married again, in which event her title was to cease.   She did not marry a second time.   At her death, or marriage, the lands, under the devise, were to go to seven or eight named remainder-men, some of them children, and others grand-children of the testator.   Two of the complainants are grand-children.   They are brothers, and, jointly, were to have one share, equal to that of the children. One of the complainants, Mrs. Boyd, and William J. Johns, one of the defendants, are children, entitled to take under the will.   The complainants are residents of the State of Texas, and have been such ever since 1875, if not before that time. The reason given in the bill why the other devisees in re- mainder were not made parties to the suit, is that the said William J. Johns had purchased, and was the owner of their several interests under the will of Thomas Johns, Sr.   This averment is admitted, and is proved to be true.

In 1875 the widow went to Texas, and remained among her children living there until 1883, or '4, when she died.   What disposition, if any, she made of her life-estate when she went to Texas, is not made a subject of averment or proof.

The lands were assessed for taxes, in 1877, to James M. Johns, son of testator, and one of the devisees in remainder. It is not shown he was in possession, nor is it any where shown why the lands were assessed to him.   In May, 1878, they were sold for the taxes of 1877, and William J. Johns became the purchaser, bidding nine dollars and some cents—the amount of the taxes and charges.   At that time a son-in-law of Wm. J. Johns was in possession.   Before the end of the year 1877, Wm. J. Johns went into possession, and has re- tained it ever since, with the exception of parts of the tract, since that time sold by him to Thomas Johns, Jr., his son, and to one Cook.   They are made defendants to this bill.   In May, 1880, two years after the tax-sale, the judge of probate of Cleburne county executed to Wm. J. Johns a tax-title to the lands.

The following are among the uncontroverted facts in this case:   James M. Johns, one of the devisees in remainder, executed a deed, bearing date October 15, 1877, conveying his interest in the lands to Wm. J. Johns.   This deed is on the recited consideration of seventy dollars.   Another deed was made to said Wm. J. Johns by one Brown, purporting to convey the interest of his wife in said lands.   His wife was Mary Elizabeth, *nee* Johns, one of the devisees in remainder.

[Johns v. Johns.]

This deed is dated December 8, 1879, is on a recited consideration of one hundred and twenty-five dollars, and assumes to convey to Wm. J. Johns all the interest of W. T. Johns in said lands. The name of W. T. Johns is not found in the will, but Thomas Walker Johns, son of J. L. Johns, is one of the devisees in remainder; the same person possibly. William J. Johns testified, that all these purchases were made before the tax-sale in May, 1878, although two of the deeds bear later dates. We have now stated all the facts we consider material.

The bill in this case was filed February 22, 1889, nearly eleven years after the tax-sale, nearly nine years after the tax deed was executed, and some five years after the death of the widow, the life-tenant under testator's will. The complainants, as we have seen, are three of the devisees in remainder, who have resided in Texas ever since 1875. The bill seeks to assert the interest of complainants in the land, to have the tax-deed declared inoperative against their title under the will, and to have the lands sold for division. It avers that they can not be equitably divided without a sale, and prays a sale for division among the devisees. Mrs. Boyd claims one sixth of the land, and the other complainants one twelfth each. On the final hearing on the merits, the chancellor dismissed the bill, but "without prejudice to their filing another bill, or seeking any further remedy in this, or any other court, as they may be advised."

The defense assumed several forms. *First*, that chancery has no jurisdiction to order the sale of lands for division among the tenants in common. Only the Probate Court, it is contended, can grant such order. Many decisions of this court have announced that doctrine.—*Deloney v. Walker*, 9 Por. 497; *Oliver v. Jernigan*, 46 Ala. 41. That rule, however, was changed by statute before this suit was commenced. The Code of 1886, § 3262, declares, "The Chancery Court shall have concurrent jurisdiction with the Probate Court to divide or partition, or to sell for division or partition, any property, real, personal, or mixed, held by joint owners or tenants in common."

*Second.* It is contended that this property was adversely held by Wm. J. Johns, and those claiming under him, before and at the time this suit was brought, and that complainants should have first established their title by suit at law, before claiming partition, or sale for division. A sufficient answer to this objection is found in the facts of this case. Wm. J. Johns claimed title to the lands under a tax-sale made in May, 1878, and deed made to him pursuant to his purchase at that sale.

That sale was made under the revenue law approved March 6, 1876.—Sess. Acts, 43. Section 22 of chapter 8 of that statute—page 75 of the Session Acts—gives the form of deed to be executed to the purchaser of lands at tax-sale; and section 23—page 77—declares that deeds, "when substantially thus executed, and recorded in the proper record of titles to property, . . . shall be *prima facie* evidence in all the courts of this State, in all controversies and suits in relation to the rights of the purchaser, his heirs or assigns, to the land thereby conveyed, of the facts recited in the deed."—Code of 1876, §§ 459, 460. The tax-deed under which William J. Johns claimed title was executed and recorded in substantial conformity to the statute, and hence the deed vested a *prima facie* title in him. There is neither averment nor proof in the record before us that any of the recitals in that deed are untrue, and we must therefore treat them as true. Being true, the complainants in this suit have no title which can be called legal, or which can maintain an action at law in their names. Their claim, if worth anything, is an equity—an equitable right to have William J. Johns declared a trustee of the title for their equal benefit. Of such equitable title the Chancery Court alone has jurisdiction; and it results that there is nothing in the objection or contention that complainants should first have established their title in a court of law.—*Mc-Math v. DeBardelaben*, 75 Ala. 68; *Dameron v. Jamison*, 71 Mo. 97; *Lassiter v. Lee*, 68 Ala. 287.

Being only a tenant in common with complainants in the remainder, or ultimate fee in the land, could William J. Johns, by his purchase at tax-sale, cut off the right of the other tenants in common, and acquire the exclusive title in himself? We hold that he could not, even on the facts shown in this case. The interest and duty to prevent a loss of the freehold by tax-sale, were as mandatory and binding on him as on his co tenants in remainder. He must be content with the right the law gives him; the right which accrues to one who pays taxes for which others are equally bound. He is entitled to reimbursement out of the use and occupation. He must be treated as a trustee of the title, for the equal benefit of all the co-tenants.—Freeman on Co-tenancy & Partition, § 158; Cooley on Taxation, 2d Ed. 500; Burroughs' Taxation, § 123; Black, Tax-Titles, § 141; *Weare v. Van Meter*, 42 Ia. 128; *Flinn v. McKinley*, 44 Ia. 68; *Rice v. Derby*, 59 Ia. 312; *Pruitt v. Holly*, 73 Ala. 369; *Bailey v. Campbell*, 82 Ala. 342; *Donnor v. Quartermas*, 90 Ala. 164.

Each tenant in common has an equal right to occupy the common freehold, and the exercise of ordinary acts of owner-

[Johns v. Johns.]

ship by one is not, without more, an adverse holding which can ever ripen into a title. To have that effect, there must be an actual ouster, or actual refusal of the co-tenants' rights to occupy. Actual occupancy, actual exercise of acts of ·ownership, actual improvements of the property, may all co-exist, and yet the holding not become adverse to the.co-tenant. Eviction, denial of the right to enter, or exclusive claim of the right to occupy, must exist, and must be shown to have been made known to the co-tenant, before the possession becomes ·adverse in law.—*Newbold v. Smart*, 67 Ala. 326; 3 Brick. Dig. 17, §§ 20, 21; *Woodstock Iron Co. v. Roberts*, 87 Ala. 436; *Burrus v. Meadows*, 90 Ala. 140; *Fitzgerald v. Williamson*, 85 Ala. 383. The defendant, Wm. J. Johns, is in no position ·to claim the benefit of the statute of limitations.

Should it be supposed that Thomas Johns, jr., or Cook, has ·acquired an independent title superior to that which William J. Johns can assert, the answer is that neither in averment nor proof has either of them made good such claim.—3 Brick. Dig. 809, § 155 *et seq.*

The result of what we have declared is, that the decree of the chancellor in vacation, rendered July 11, 1890, must be reversed. This opens up the case back to the report of the register, and the exceptions filed thereto. These the chancellor will consider.

We feel it our duty to note one error the register seems to ·have fallen into in taking the account. The testimony shows that Mrs. Mary Johns, life-tenant, died in 1883, or 1884. Up ·to that time, the present complainants had no right to the possession of the land, and, as devisees, can claim no rents for the use and occupation. The extent of the relief they can ·claim during the term is, that the lands shall pay their own expenses. This will include all the taxes paid, as well the ·money paid at the tax-sale as the assessments made afterwards. Necessary repairs to preserve the property, and to maintain its habitable, cultivable quality, fall also within this class. Per-·manent improvements made during the life-tenancy—such as added to the permanent value, and so added at the time the life-estate fell in—will be a proper credit to the defendant; not at the cost of their erection, but at the enhanced value ·they imparted to the land, at the time the right of the com-·plainants to occupy accrued—the death of the life-tenant.

Reversed and remanded.