228 So.2d 806

**Green B. SMITH, Sr., et al.**

**v.**

**F. J. PERSONS.**

**5 Div. 824.**

Supreme Court of Alabama.

Nov. 21, 1968.

Rehearing Denied Dec. 11, 1969.

Rushton, Stakely & Johnston, Montgomery, for appellants.

Russell, Raymon & Russell, Tuskegee, for appellee.

LIVINGSTON, Chief Justice.

Respondents and cross-complainants appeal from a (final and supplemental) decree of the Circuit Court of Macon County in Equity, wherein certain lands belonging to appellants and appellee were ordered sold for partition among the joint owners (appellants and appellee), and certain relief denied to appellants. Demurrers of appellee to an original cross bill and amendatory cross bills were sustained and the cross bills dismissed upon failure of appellants further to amend them.

It appears from the evidence without dispute that one F. J. Persons, Sr., died in 1914, leaving a widow, Claudia Persons, and three children, F. J. Persons, Jr. (appellee), Olivia and Bernice. The widow subsequently married one Irvin Menifee; Bernice married one Lawrence D. Mason (party respondent), while Olivia married Green B. Smith, also a party respondent, and here an appellant. The widow, Claudia Menifee, died in December, 1962, without issue by her second husband; Olivia died intestate in 1958, leaving eight children born to her marriage with Green B. Smith. These children were all made parties respondent to the bill for partition, which was filed on January 14, 1963, shortly after the death of Claudia Persons Menifee.

The deceased, F. J. Persons, Sr., left 115 acres of land in Macon County. This land had been his homestead or the place of his residence prior to moving to Jefferson County where he resided when he died. The widow, with her three children, moved back to her former homestead, the 115 acres, where she resided when she married Irvin Menifee. Sometime after this marriage, she and her husband moved off and never again resided on this land. This acreage and the improvements thereon were run-down and badly deteriorated prior and subsequent to her marriage. There was no administration on the decedent Persons' estate, and no dower in the land was ever set aside or allotted to the widow.

Sometime in the early part of 1922 or 1923, the widow importuned her son-in-law, Green B. Smith, and his wife, Olivia, to move on the lands, the 115 acres, and according to his version, she gave the land to them, but no conveyance was ever executed. Smith and his wife, responding to the invitation, moved on the land in 1922 or 1923. They, during the course of their occupancy and pending the death of Claudia Menifee in December, 1962 planted pecan trees, made considerable repairs and improvements of value, and were living there in December, 1962, when Claudia Menifee died.

Smith signed the tax assessment sheets from year to year pending the death of his mother-in-law. The property, due to the reluctance of the tax assessor, according to Smith, was not assessed in his name, but to a specific heir (by name) and "others,— heirs of F. J. Persons, deceased." Smith paid the taxes accruing during his occupancy.

Pending the instant suit, and soon after it was filed, Smith procured a valid conveyance to the land from all eight of his children and their respective spouses. He then proceeded in answer to the bill for partition to assert title to the tract of land that is the subject matter of this suit.

This assertion was in the form of an answer to the original complaint in which he denied that complainant had any right, title or interest in the land; also he made such assertion by answer and cross bill to which demurrer of complainant was sustained. He filed several amendatory cross bills alleging and claiming certain relief as to taxes paid, repairs and improvements made during the occupancy of himself and his wife. Demurrers to these amendatory cross bills were sustained, culminating in a dismissal by the trial court when final decrees (original and supplemental) were rendered. According to the trial court, the dismissal was ordered upon failure of the cross-complainants to amend after demurrer sustained.

Respondent Smith and five of his children, on May 21, 1965, which was a few

days prior to taking evidence that began on June 22, 1965, filed an answer to the original complaint. This answer was amendatory of the original answer. It was not labeled or identified by allegations that it was a cross bill, although certain affirmative allegations were made with respect to Smith's ownership of the land, taxes paid, repairs made and improvements built on the premises. The answer contained many of the allegations of the original cross bills, and particularly denied complainant owned or had any interest in the subject land.

The answer also prayed that respondent Smith be given certain relief. We quote the prayer as follows:

"And your respondent Green B. Smith, Sr. having answered, is entitled to a determination by this Court that the above described property is his, and that the Complainant F. J. Persons and the respondent Lawrence D. Mason [surviving husband of Bernice Persons] have no right, title or interest therein by virtue of Respondent Green B. Smith, Sr.'s acquisition of title by conveyance from his children and by Adverse Possession or Prescription. Your Respondent further avers that even if this Court should deny his title as aforesaid, that he is entitled to the value of his curtesy rights plus the value of title acquired by him from his said children aforesaid, plus the value of the taxes paid by him on said property since 1922, with interest thereon, and plus the value of the improvements to the property made by him since 1922, with interest thereon. And Respondent Green B. Smith, Sr., prays for equitable relief in the premises, both general and special."

There was no demurrer to this particular instrument, which, as we have noted, contains kindred allegations and prayer for relief that appear in prior cross bills to which demurrers were sustained.

When the trial started, the following colloquy took place between counsel for the parties and the trial court. We quote therefrom as follows:

"MR. RAYMON: (Counsel for appellee) If the Court please, I believe that by agreement of the Counsel for the Respondent we can stipulate that the property in question as described in the bill of complaint is a correct description of the property and that it was owned by F. J. Persons, Sr., at the time of his death somewhere around 1915 or 1916, unless you all have something different.

"MR. STAKELY: (Counsel for respondent) 1914.

"MR. RAYMON: Well, it was owned by him at the time of his death. And then we will let the witnesses testify F. J. Persons, Sr., was the owner at the time of his death.

"THE COURT: Could you go a little further and just stipulate who the heirs are? Wouldn't that be necessary in this case?

"MR. RAYMON: Yes, sir.

"THE COURT: Who the heirs at law are?

"MR. RAYMON: Yes, sir, we could do that.

"MR. STAKELY: I don't think it would take too much to do that, Your Honor. Is your man prepared to testify to that?

"MR. RAYMON: Yes, he knows who the heirs are. Maybe we better just let the witnesses testify to that, so we won't have to waste any time introducing deeds and so forth.

"THE COURT: Gentlemen, as I understand this case, the original bill of complaint was filed by F. J. Persons, who apparently is F. J. Persons, Jr.

"MR. RAYMON: That's correct.

"THE COURT: Then a bill for partition; and then, the Respondent now files an answer claiming title to the property in the name of Green Smith by prescription or adverse possession. Those are the issues, aren't they?

"MR. JOHNSTON: (also Counsel for respondent Smith) Generally, Sir. He also not only claims it by prescription, but by virtue of a conveyance made to him by his children as the heirs of their mother, deceased. In order that we can get complete on that subject, Your Honor, the alternative position is in here. The bill as I understand it, seeks sale for division. Respondent answers in these alternatives; number one, if the Court should find the interest of the parties as alleged in the complaint that the property can be partitioned, and that there is no need for sale for division. And then, secondly, it is the position of the Respondent that the Complainant does not have title; that title is vested in the Respondent by prescription and by virtue of the deed of conveyance.

"THE COURT: Vested in Green B. Smith, isn't it?

"MR. JOHNSTON: That's right, sir. By prescription and by virtue of a deed.

"THE COURT: By virtue of a deed executed to him by his children pendente lite?

"MR. RAYMON: That's right.

"THE COURT: Okay.

"MR. JOHNSTON: And then in the alternative our position is that even if all the issues are found against the Respondent Smith, that his position in occupancy was such that he is entitled to be repaid for taxes paid by him with interest thereon. And the improvements made by him on the property. Is that correct? Have I correctly stated the—

"MR. RAYMON: That is what you are contending.

"MR. JOHNSTON: The issues as they have been made?

"MR. RAYMON: That's what I think your answer is."

While no answer to the instrument which contains affirmative allegations and prayer for relief was ever filed, it occurs to us that the parties agreed that the issues before the court were title by deed or adverse possession and prescription; and in the alternative the right vel non of Respondent Smith to a refund of taxes paid and reimbursement for improvements on the property which he contends he made during his occupancy. See Atkins v. Atkins, 253 Ala. 43, 42 So.2d 650.

We have examined the evidence and find that it was responsive to the affirmative allegations in the answer and to the aforequoted stipulation of issues between counsel for the parties that were submitted to the court.

■ We recognize that sustention of demurrers to the designated cross bill and amendatory cross bills had the effect of eliminating them until amendment filed. Savage v. Savage, 246 Ala. 389, 20 So.2d 784.

■ While the answer aforementioned, filed on May 21, 1965, approximately one month before the trial began, was not specifically designated or labeled a cross bill, and lacked some of the routine and formal identifications that it was such an instrument, we think that it was in effect a cross bill. The stipulation, supra, between the parties recognized the issues presented by this instrument. The instrument was treated as a cross bill in that certain affirmative allegations and the prayer for relief therein were recognized by the parties during the trial, although no answer to the alleged cross bill was filed. It had the earmarks of a cross bill. We hold that under the circumstances, it was such an instrument.

Further, there was considerable evidence introduced as to the taxes assessed, repairs and improvements made on the premises. While it is true the trial court heard the

evidence pursuant to Section 372(1), Title 7, Code 1940, Cum. Pocket Part, Act No. 101, General Acts 1943, p. 105, which dispenses with making objections in equity trials and permits the trial court to consider only legal evidence, we think the parties in adducing the evidence, had in mind the issues set forth, supra, and respondent's right to relief as prayed.

We hold that if the trial court's dismissal of the cross bill included the instrument filed May 21, 1965, such inclusion was error. We do not think the Respondent Smith abandoned the affirmative aspects of his answer and the relief prayed for as quoted, supra. There was no demurrer to this instrument, and the affirmative allegations with respect to the improvements made and the prayer for relief with respect thereto should have been considered by the trial court without regard to disposition of cross bills, original and amendatory, filed prior to the instrument of May 21, 1965, supra.

We now come to the merits of the original bill and the cross bill as last filed on May 21, 1965.

█ We have read and considered the evidence and, without going into detail, we hold that the trial court did not err in decreeing that respondents failed to establish their alleged fee simple title to the land to the exclusion of complainant; and in decreeing that the parties to the suit were joint owners as alleged in the original bill. Respondents failed, according to the trial court, to establish by competent and convincing evidence certain essential elements of adverse or prescriptive title to the premises. We deem it unnecessary to catalogue these omissions which are mentioned in the elaborate original and supplemental decrees of the trial court. Suffice it to say that neither respondent Smith, nor his wife, during their occupancy ever assessed the land in his or her name; neither did he, by his own testimony, ever advise or inform complainant that he was claiming exclusive title to the land, or that he was occupying, repairing and improving the same under such claim of absolute and exclusive title.

There are certain principles of law to which we will refer that are applicable and pertinent to the instant case.

█ The widow, under her quarantine rights, was entitled to possession until her death in December, 1962. Sec. 50, Title 34, Code of Alabama 1940.

In Cotney v. Eason, 269 Ala. 354, 113 So.2d 512, this Court .observed as follows:

"A remainderman not in possession is under no duty to maintain a bill to remove a cloud from his remainder estate pending a life estate, but there are circumstances which require him to act pending the particular estate in order that he may escape the charge of laches. Ward v. Chambless, 238 Ala. 165, 189 So. 890; Teal v. Mixon, 233 Ala. 23, 169 So. 477. 'A person cannot be said to be guilty of laches until he has knowledge of the facts which entitles him to relief and thereafter manifests a want of diligence in asserting his rights,' Hagood v. Knight, 257 Ala. 64, 57 So.2d 616, 618; or unless he has knowledge of his rights or the claim of the opposing party or was possessed of such information as would put a person of ordinary prudence and diligence on inquiry which, if followed up, would reasonably lead to discovery of the situation. Pittman v. Pittman, 247 Ala. 458, 25 So.2d 26."

█ In the case of Stewart v. Childress, 269 Ala. 87(6, 8), 111 So.2d 8, we quote the applicable rule from the case of Dothard v. Denson, 72 Ala. 541:

" 'The mere possession of land is not *prima facie* adverse to the title of the true owner. *All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it.*

\* \* \* But, though this presumption attaches to the possession—that it is an occupancy by right—the presumption disappears in the presence of the title. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring wrong, will not presume that the possession was taken, or is held and claimed, in hostility to the title. *The burden of proving the possession adverse—that it was taken and held under a claim of title hostile to the title of the true owner—rests upon the party asserting it.* [Cases cited.]' (Emphasis supplied.)

"This principle was reaffirmed in White v. Williams, 260 Ala. 182, 69 So. 2d 847. This last cited case also gave expression to the principle that a permissive possession does not ripen into title unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. In further illucidating the principle it was also held: Limitations begin to run from the date of notice of hostility but are not operative before hostility is shown, and whether the possession was with the intention of claiming title is generally held to be a question of fact; a permissive occupant cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile."

The eminent and late Chief Justice Stone, in Johns v. Johns, 93 Ala. 239, 243, 9 So. 419, 421; observed:

"Each tenant in common has an equal right to occupy the common freehold, and the exercise of ordinary acts of ownership by one is not, without more, an adverse holding which can ever ripen into a title. To have that effect there must be an actual ouster, or actual refusal of the co-tenants' right to occupy. Actual occupancy, actual exercise of acts of ownership, *actual improvements of the property,* may all co-exist, and yet the holding not become adverse to the co-tenant. Eviction, denial of the right to enter, or exclusive claim of the right to occupy must exist, and must be shown to have been made known to the co-tenant, before the possession becomes adverse in law. \* \* \*" (Emphasis supplied.)

It occurs to us, and we think to the trial court, that Respondent Smith went into possession with permission of the widow, Claudia Persons Menifee. She was entitled to possession under her quarantine rights. Sec. 50, Title 34, Code 1940, Recompiled in 1958. The character of this quarantine possession was not changed by the widow's subsequent marriage and removal from the premises. Foy v. Wellborn, 112 Ala. 160, 20 So. 604. The possession of Respondent Smith and his wife was essentially permissive when he entered the premises, and will be regarded as so continuing unless disclaimed by declarations or acts unmistakably hostile, the equivalent of an abandonment or termination of the quarantine to which the widow was entitled, of which the heirs or cotenants had notice of knowledge, or which were so open and notorious that notice or knowledge must be imputed to them. Foy v. Wellborn, supra.

The evidence imports no more than that the occupants paid the taxes, made repairs, planted pecan trees, and made improvements during the many years of permissive occupancy—from 1922 to 1962. These acts were not per se notice of hostile possession. Johns v. Johns, supra.

Complainant, under this permissive occupancy at the invitation of the widow in the exercise of her quarantine rights, had no right of entry on the premises as an occu-

pant, and was not called upon to seek out or ascertain the purpose of Respondent Smith and his wife in making the improvements on the premises. The evidence shows that the original dwelling on the premises was so deteriorated and in such poor repair that it was almost unfit for human occupancy, and if they were to stay there, improvements had to be made.

The planting of pecan trees was a productive measure to make the occupancy more profitable. We do not think that the improvements, the repairs nor the planting of the pecan trees would charge Appellee Persons with notice of hostile or an adversary possession. These acts and productive efforts were all consistent with permissive occupancy over a period of years —from 1922 to the death of the widow in December, 1962.

We gather from the evidence that Respondent Smith and his wife were under the impression that the widow, Claudia Persons Menifee, had given them the land and it was theirs to make improvements and repairs and to make it more productive. They were acting in good faith in their misguided belief that the property belonged to them. This good faith was not manifested by declarative words or acts of such character that imported hostility and notice thereof to complainant. As we said, the improvements and repairs were consistent with urgent need if permissive occupancy was to be obtained and continued over a period of years.

■ We held in Penny v. Penny, 247 Ala. 434, 24 So.2d 912, 915, that the general rule obtaining in this jurisdiction is that compensation for improvements erected on land will be allowed the improving cotenant only when he was without knowledge of any outstanding interest and, bona fide, believed himself to be the owner of the property. Gordon v. McLemore, 237 Ala. 270, 186 So. 470; Staples v. Pearson, 230 Ala. 62, 159 So. 488, 98 A.L.R. 852; Chambers v. Hunton, 222 Ala. 482,

132 So. 713; Porter v. Henderson, 203 Ala. 312, 82 So. 668. We think the circumstances of entry, the absence of education, and other factors sustain our conclusion that Smith and his wife were impressed that the land belonged to the widow and that she had the right to and did give the land to them. This belief was strengthened as the years went by and no effort was made on the part of complainant or anyone else to disturb this occupancy.

It is our opinion that appellant Smith is entitled to be reimbursed on sale of the land for the improvements to the extent that they enhanced the value of the land at the time of the termination of the quarantine rights of the widow. Johns v. Johns, supra; Staples v. Pearson, 230 Ala. 62, 159 So. 488, 492.

■ Up until the death of the widow, Claudia Menifee, when her quarantine rights terminated, the present complainant had no right to the possession of the lands, and, as cotenant, could claim no rents for use and occupation. The extent of the relief he can claim during that term is that the lands shall pay their own expenses. This will include all taxes paid and necessary repairs to preserve the property and to maintain its habitable, cultivable quality. This principle was observed in Johns v. Johns, supra; Gordon v. McLemore, supra.

Appellant Smith opposed a sale of the land for partition among the joint owners. He contended for partition in kind and that he be allotted an area adjacent to and occupied by the improvements.

The trial court decreed that the lands could not be equitably divided or partitioned among the joint owners without a sale, and division of the proceeds among the joint owners, and that it was to the best interests of all parties that the said real estate be sold. It was ordered to be sold.

■ We have reviewed the evidence and conclude therefrom that the trial court did not err in ordering a sale of the lands.

The complainant testified that the lands could not be divided in kind so as to give each respondent a fair and equitable share. Respondent Smith testified to the contrary. The complainant offered in evidence a soil conservation plan or map upon which appears the location of the fences, woods, pasture, roads and house sites; also waterways. This map was before the court when it reached a decision.

It is our view therefrom that the lands could not be equitably partitioned in kind between the Complainant Persons and the Respondent Smith. We will not charge error to the trial court in decreeing a sale of the lands for partition of the proceeds of the sale.

It is ordered that the aspect or that portion of the (supplemental) decree which holds that none of the respondents are entitled to reimbursement from the complainant, F. J. Persons, or respondent, Lawrence D. Mason, or from the proceeds of the sale of the lands in question, for improvements made by respondents or any of them, on the property in question, be and the same is reversed. On remand of this cause, the trial court, either before or after sale, shall proceed to determine from competent evidence the enhanced value, if any, of the land that flows from the improvements as of December, 1962, when the widow, Claudia Menifee died. Such value shall be deducted from the sale price of the lands and paid to respondent and cross-complainant Green B. Smith. Johns v. Johns, supra.

It is further ordered that all other aspects or provisions of the (original and supplemental) decree are affirmed.

The decree of the trial court is affirmed in part and reversed and remanded in part with directions.

Affirmed in part and reversed and remanded in part with directions.

LAWSON, MERRILL and HARWOOD, JJ., concur.