James Hayden, Sr., appeals from a summary judgment holding that the heirs at law of Windham Granger are the owners in fee of certain real property in Henry County, Alabama. We affirm.
James Hayden, Sr., individually, and as executor of the estate of Florence Granger, filed a complaint in the Circuit Court of Henry County, naming as defendants the heirs of Windham Granger, seeking to *Page 607 
quiet title to the two parcels of property which are the subject of this litigation. A summary judgment was rendered in favor of the heirs, and Hayden appeals.
The undisputed material facts in this case show the following: Windham and Florence Granger were married on December 12, 1922, and lived together as husband and wife until the death of Windham Granger on January 22, 1963. Florence Granger was the aunt of James Hayden, Sr. She and Windham Granger raised him following the death of his mother in 1929, when he was four weeks old. He was, however, never legally adopted by them.
An undivided one-half interest in the first parcel of property that is the subject of this suit was conveyed to Windham Granger on April 6, 1954; that parcel consists of approximately 177 acres.[1] The second parcel of property that is the subject of this suit consists of approximately 25 1/2 acres and was conveyed to both Windham and Florence Granger on December 28, 1962. They held title to that parcel as tenants in common.[2]
On January 22, 1963, Windham Granger died intestate. He was survived by Florence Granger, three brothers, and the heirs of a deceased brother and sister. His three brothers who survived him have since died, leaving heirs. Upon his death, Windham Granger's interest in the two parcels passed to his heirs at law. Some of the heirs conveyed their respective interests in both parcels to Florence Granger, making her a co-tenant with the remaining heirs as to all of the subject property.
Administration was had on the estate of her husband; however, Florence Granger did not institute any proceedings to have her dower or homestead set aside. She did continue in possession of the property. Windham and Florence Granger resided in a house located on the first parcel. Florence Granger continued to occupy this house until her death. Hayden and his family lived in the house with Florence Granger from January 1963 to June 1966, at which time he bought a mobile home and placed it adjacent to the house. He and his family have resided in this mobile home continuously since June 1966.
Florence and Windham Granger were renting out portions of the property for farming at the time of the latter's death.[3]
Thereafter, Florence Granger continued to rent out portions of the property for farming and received the proceeds.
In 1967 or 1968, Florence Granger had an undetermined amount of timber on the property cut and sold, and received the proceeds from that sale.[4] During that same time period, she made repairs and improvements to the house. She made further repairs and improvements in 1976 and 1977. Annually, following the death of her husband, either Florence Granger or Hayden paid the taxes on the first parcel, which was assessed in the name of Windham Granger or his estate. Florence Granger died on December 14, 1982. She left a will wherein she devised all of the real property in which she held an interest to Hayden. At no time since the death of Windham Granger have any of his heirs actually occupied the property or paid any portion of the taxes on it.
Hayden contends that Florence Granger divested the heirs of their interest in the property pursuant to § 6-5-200, Ala. Code 1975 (statutory adverse possession). Therefore, he argues, he is now the owner in fee of all of the property by virtue of Florence Granger's will. In the alternative, he contends that he and Florence Granger adversely possessed the property for a period of 20 years so as to divest the *Page 608 
heirs of their interests under the common law doctrine of prescription.[5]
The heirs argue that a requirement necessary for the perfection of title under either theory, hostile possession, has not been satisfied, and therefore, that summary judgment was properly granted in their favor. We agree.
Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56 (c), A.R.Civ.P.
Adverse possession by prescription requires actual, exclusive, open, notorious, and hostile possession under a claim of right for a period of twenty years. Downey v. NorthAlabama Mineral Development Co., 420 So.2d 68 (Ala. 1982). Section 6-5-200 requires the same elements, but provides further that if the adverse possessor holds under a deed or other color of title duly recorded for ten years, annually lists the land for taxation for ten years, or derives title by descent cast or devise from a possessor, he or she may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Downey v. North AlabamaMineral Development Co., supra.
Section 50, Title 34, Code 1940 (recodified as § 43-8-114, Ala. Code 1975), which was in effect at the time of Windham Granger's death, read as follows:
 "The widow may retain possession of the dwelling house where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto and the plantation connected therewith until her dower is assigned her, free from the payment of rent."
In Foy v. Wellborn, 112 Ala. 160, 20 So. 604 (1895), construing § 1900, Code 1886 (the predecessor of § 50, Title 34, Code 1940), the Court, quoting Null v. Howell, 111 Mo. 273,278, 20 S.W. 24 (1892), stated:
 "`The widow remains in the mansion house and occupies the plantation by the sufferance of the heir or those claiming under him. Her possession is in no sense hostile or adverse to either. Forbearance on the part of the heir to terminate the quarantine rights of the widow, has been properly commended by the courts.' The heirs seeking a recovery of the premises, are not lineal descendants of the deceased husband; they are collateral heirs, and it may be matter of commendation that they were unwilling to disturb the possession of the widow during her life. Not disturbing it, her possession was essentially permissive, and will be regarded as so continuing, unless disclaimed by declarations or acts unmistakably hostile, the equivalent of an abandonment or termination of the quarantine, of which the heirs had notice or knowledge, or which were so open and notorious, that notice or knowledge must be imputed to them." (Emphasis added.)
112 Ala. at 165-66, 20 So. at 605.
In White v. Williams, 260 Ala. 182, 188-89, 69 So.2d 847, 852
(1954), the Court noted:
 "Bearing on the question of what acts and declarations of the widow amount to a change from a state of permissive possession to one of hostility, our cases have held: `We need not state any affirmative rule as to what, on the part of the widow having such right (quarantine), will convert her presumptively subordinate possession into one adverse to the title. Doubtless a divestiture of her dower right, as by a release to the heir or tenant, or other act amounting to a relinquishment of a dower, brought to the notice of the legal owner, would enable her thereafter to set up a possession which would be so adverse, and to perfect and prove ownership thereunder according to the usual rules. But, so long as the right of quarantine accompanies *Page 609 her possession, it excludes the owner's right to the possession, and is sufficient to defeat any action he might bring therefor. While such is the status of the parties, no mere claim or assertion of ownership, however often and openly made, would start the statute of limitations to run against the owner, to whom the right of entry and the cause of action has not acccrued.'" (Emphasis in original; citations omitted.)
In Taylor v. Russell, 369 So.2d 537, 541-42 (Ala. 1979), the Court stated:
 "We do not intend, however, to suggest that there are no circumstances where a widow can acquire title by holding adversely as against the husband's heirs. Where the widow gives up her dower rights, as by a release to the heirs, or other acts amounting to an unequivocal relinquishment of dower, and the legal owner receives notice of such fact, she can then establish an adverse holding and prove ownership under it according to the customary procedures and rules. . . .
 "As a prerequisite to the widow's possession becoming adverse against the heirs of her husband, it has been held that she must repudiate the title of her husband and disavow any claim to such title and give notice of the disavowal, and that notice of the disavowal must be brought home to the heirs. . . . A widow whose dower remains unassigned cannot acquire title by adverse possession as against the heirs simply by remaining in the possession of her husband's land. [Citations omitted.]
". . . .
 "Admittedly, the law casts a heavy burden on one seeking to establish acquisition of a fee interest by a life tenant through adverse possession. Indeed, unless the evidence convinces the trial Judge that Mrs. Berry's possession converted from one in amity with the heirs to one of hostility, amounting to a repudiation of her husband's title and disavowal of her life interest therein with notice of such disavowal to the heirs, no finding of adverse possession can be made."
The undisputed facts in this case show that the heirs of Windham Granger have not been divested of their interest in either parcel by statutory adverse possession or by adverse possession by prescription. Florence Granger was entitled to possession of the first parcel pursuant to her right of quarantine under § 50, Title 34, supra. Windham Granger was residing in the house located on that parcel at the time of his death. Therefore, as her dower was never assigned, Florence Granger's continued possession was, at all times subsequent to the death of her husband, permissive, unless she repudiated it by acts or declarations, unmistakably hostile, the equivalent of an abandonment or termination of the quarantine or her right to dower. It is undisputed that Florence Granger never expressly released her dower right. With respect to the first parcel, it is also undisputed that she did no more than pay the property taxes and make certain repairs and improvements to the house during the years of her occupancy between 1963 and 1982. Assuming that she also cut timber from the first parcel and rented portions of it for farming, these acts did not constitute an abandonment or termination of her quarantine or dower right. Florence Granger was entitled, under the provisions of § 50, Title 34, supra, to receive the proceeds generated from the rental of the farmland. Jay v. Jay, 289 Ala. 513, 268 So.2d 788 (Ala. 1972). The repairs and improvements that she made to the house were productive efforts and consistent with a permissive occupancy over a period of years.White v. Williams, supra.
While it is true that the payment of taxes and cutting of timber for profit have, under certain circumstances, been considered hostile acts of ownership for the purpose of establishing title by adverse possession, in this instance they are not the equivalent of a release of marital rights.
The failure of the evidence to show conclusively that the second parcel is connected *Page 610 
to the first within the meaning of § 50, Title 34, supra, precludes a determination that Florence Granger was entitled to possession of the second parcel under her right to quarantine. This notwithstanding, she was entitled to possession of the second parcel as a co-tenant with the heirs.
This Court, in Tyson v. Jackson, 364 So.2d 1140, 1141-42
(Ala. 1978), stated:
 "The rule has long been established in this jurisdiction that the possession of one tenant in common is presumed to be the possession of all; and such possession does not become adverse to the cotenant until he is actually ousted or short of ouster, the adverse character of the possession of one is actually known to the other, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenant on notice of its adverse character. [Citations omitted.]
 "Before the possession of a cotenant may be regarded as adverse to his cotenant, he must repudiate the cotenant's interest in the property by act or declaration. . . . This means that there must be some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally. [Citations omitted.] . . . In Ratliff v. Ratliff, supra (234 Ala. [320] at 322, 323, 175 So. [259] at 261 [1937)]), this court stated the rule as follows:
 "`. . . The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of cotenants; but there must be positive information of the facts, however informally communicated or acquired. . . .'"
(Emphasis added.)
And, in Smith v. Persons, 285 Ala. 48, 55, 228 So.2d 806, 812
(1968), the Court, quoting Johns v. Johns, 93 Ala. 239,9 So. 419, observed:
 "`Each tenant in common has an equal right to occupy the common freehold, and the exercise of ordinary acts of ownership by one is not, without more, an adverse holding which can ever ripen into a title. To have that effect there must be an actual ouster, or actual refusal of the co-tenants' right to occupy. Actual occupancy, actual exercise of acts of ownership, actual improvements of the property, may all co-exist, and yet the holding not become adverse to the co-tenant. Eviction, denial of the right to enter, or exclusive claim of the right to occupy must exist, and must be shown to have been made known to the co-tenant, before the possession becomes adverse in law. * * * *' [Emphasis in original.]"
It is undisputed that Florence Granger never expressly denied the heirs' title to the second parcel or their right to possess it. Therefore, any acts of ownership with respect to that parcel that she might have exercised between 1963 and 1982 would not constitute an adverse holding capable of ever ripening into a title.
Hayden has failed to prove an essential element common to both theories of adverse possession, namely, a hostile possession. Accordingly, there was no error in granting a summary judgment in favor of the heirs.
The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] The evidence does not show who owned the remaining undivided one-half interest in the first parcel.
[2] The evidence does not conclusively show that the two parcels are connected.
[3] The evidence does not show whether the portions so rented were a part of the first or second parcel or both.
[4] Again, the evidence does not show from which parcel(s) the timber was cut.
[5] Hayden would tack on his time of possession subsequent to Florence Granger's death to complete the twenty years.