MADDOX, Justice.
These appeals involve a dispute over the title to real property on Alabama’s Gulf coast, known as “Navy Cove” or “Pilot Town,” and is unique in that 14 bar pilots received title to the property in 1872, as tenants in common, with the right of each to stake out a portion of the property and build a house on it. The dispute involves successors in title to these 14 original bar pilots, and the specific question presented *1271 on this appeal is whether the claimants/ap-pellees or their successors committed such acts of adverse possession and use of portions of the property which effected an ouster of their co-tenants. The trial court found that there had been an ouster. We reverse and remand, as to that finding.
These appeals are from an amended decree of the Circuit Court of Baldwin County by which the trial court basically awarded three sets of claimants/appellees either all or a part of their claim to a certain specific ownership claimed by them in a larger tract designated as “Navy Cove” (sometimes called “Pilot Town”), in fee simple. The claimants/appellees all claim to have acquired by adverse possession, against their co-tenants, the specific property awarded to them, and, in addition, each claimant/appellee claims to own an undivided interest in the remainder of the subject Navy Cove property.
All of the Navy Cove appellants, and all of the three sets of claimant/appellees, claim an interest in the Navy Cove property by virtue of an administrator’s deed, dated August 27, 1872, and filed October 6, 1872, recorded in deed book J, pages 59-60, in the Office of the Judge of Probate of Baldwin County, which was a deed to 14 original bar pilots.
These appeals involve two cases that were combined and consolidated before trial. The first suit was a bill to quiet title in personam to two acres (the Nicholls claim), and it was filed 27 years ago, on May 26, 1960. The Nicholls claim was filed by Eleanor J. Nicholls, William W. Nicholls, and Mary N. Spencer against Divie L. Ki-nard, Quincie A. Godwin, and A.S. Godwin, and was assigned case number 4949. The second suit was assigned case number 7546, and is the main case in which most of the Navy Cove appellants or their predecessors are listed as parties. It was filed on August 11, 1964. This second suit was filed against the other heirs of the 14 original bar pilots and others as tenants in common to five tracts of land, all being a part of the Navy Cove tract. The second suit (case number 7546) was to quiet title in rem and in personam and/or for partition or sale for division.
Various pleadings and substitutions of parties were made during the ensuing years, and the Norville claim, answer, and counterclaim were filed on November 21, 1979.
In May of 1986, the Nicholls claim was amended to include all parties to the combined cause, case number 7546.
The Circuit Court of Baldwin County in an order dated November 15, 1985, ordered the case to be tried on May 13, 1986.
The three claims were tried and resulted in the judgments appealed from.
Appellants, in their brief, set forth the following as the issues presented for review:

“(a) As to the Williams Claim

“1. Did the evidence in this case establish that Marita M. Reinhalter worked an ouster of her co-tenants as to ‘Lot A’ which was brought home to them at least ten years before August 11, 1964, and followed by at least ten (10) years’ adverse possession before August 11, 1964, or when the second suit was filed?

“(b) As to the Norville Claim

“1. Did the evidence in this case establish that Payton Norville worked an ouster of his co-tenants as to the twenty-seven (27) acre parcel which was brought home to them at least ten years before August 11,1964, and followed by at least ten (10) years’ adverse possession before August 11,1964, or when the second suit was filed?

“(c) As to the Nicholls Claim

“1. Was there a sufficient description of the two acre plot contained in any of the deeds under which the [Nichollses] claimed to give color of title to the land ultimately decreed by the trial court to be the [Nichollses’]’ two acres, as well as whether or not there was sufficient proof of ten (10) year or twenty (20) year adverse possession after an ouster of co-tenants as to the particular two acres awarded by the trial court’s amended decree to the [Nichollses]?”
*1272 The facts are undisputed that the original 14 bar pilots agreed that each of them could build a home at any place on the entire Navy Cove tract, but that they would not get title to the place where their home was built, but would still remain the owners of an undivided one-fourteenth (Vuth) interest in the whole and in their homesite. Testimony to this effect appears in several places in the record.

The Nicholls Claim

The Nicholls claimants trace their ownership to John J. Smith. In 1875, three years after the Navy Cove grant to the bar pilots, Smith, who was not a bar pilot grantee, received a deed from one M.M. Moore, purporting to convey two acres of the Navy Cove tract to him. In 1884, Smith received a deed from one George Cook, a bar pilot grantee; that deed conveyed an undivided ½8 interest in the Navy Cove tract.
The Nicholls claimants contend that their adverse possession claim is based, not on the Cook conveyance, but on the Moore conveyance. Thus, they argue, they bear no burden to show ouster, as they are not claiming as cotenants.
In support of their claim, the Nicholls claimants presented evidence that John J. Smith had owned a home on the site until it was destroyed by a hurricane in 1906, that they had paid taxes on the property annually, that they had destroyed a shack and lifeboat placed on the property in 1959 by an outsider, and that at some point Ellen Nicholls caused another of the Navy Cove descendants to remove a fence that had been erected around the subject property. Finally, the Nicholls claimants introduced testimony by H.W. Graham, a registered surveyor, which showed that Graham had, about 1951, surveyed the property site and driven corner stakes corresponding to the area that the Nichollses claimed as their own.
The appellants, in their briefs, contend that the description in the M.M. Moore deed to John J. Smith is too vague, referring as it does to fencerow boundaries which have not existed since the 1906 hurricane and tidal wave. Further, they argue that the Nicholls claimants, as tenants in common, did not prove ouster in the trial court, and that the trial court’s judgment should be reversed on that basis.

The Williams Claim

Joseph David Williams asserts an interest in the Navy Cove tract as successor to his aunt, Marita Reinhalter, who the record suggests was the daughter of one of the original Navy Cove grantees. His evidence at trial showed that Reinhalter had a portion of the Navy Cove tract surveyed in 1950, that she constructed a home on that parcel, that she posted “No Trespassing” signs at regular intervals around her claimed boundary, that she erected decorative gates and did landscaping, and that she had opened an office and attempted, apparently without success, to sell subdivided lots out of the parcel adjacent to her home. It appears that none of the other Navy Cove claimants challenged Reinhal-ter’s possession of the parcel.
The appellants take the position, regarding the Williams claim, that the claimants failed to prove ouster as that doctrine is enunciated in Tyson v. Jackson, 364 So.2d 1140 (Ala.1978), and Hayden v. Robinson, 472 So.2d 606 (Ala.1985). They direct the Court’s attention to record testimony that Reinhalter was aware of the agreement among the Navy Cove grantees regarding the use of the property, and testimony by Reinhalter’s brother and sister that she was not holding adversely to their claim, but rather that she was holding for the benefit of all of the Navy Cove cotenants.

The Norville Claim

The Norville claimants trace their claim to an ancestor, William T. Norville, who was one of the original Navy Cove grantees. The evidence introduced to support their adverse possession claim included testimony that all of the Norville claimants had been regularly visiting the property since the 1930’s and 1940’s, that their father had constructed a home on the property sometime prior to 1950, that they had had the property surveyed according to their claimed boundaries, and that they had *1273 constructed a fence around that boundary, with the gate in that fence kept locked at all times. They further testified that, to their knowledge, no one had used the property without their father’s permission, and that the home remained on the site from 1950 to 1964, when it was burned in a wildfire. In their brief, the Norville claimants, too, cite the case of Tyson v. Jackson, swpra, this time for the proposition, that they need not prove “actual ouster” or that the adverse character of their possession was “actually known” to each of the many descendants of the 14 original grantees. They contend that their possession, and that of their predecessors, was “so open and notorious in its hostility and exclusiveness” as to put the others on notice of the adverse character of their possession.
The appellants argue that the Norville claimants, like the Williams and Nicholls claimants, failed to prove an ouster. Further, they contend that the Norville claimants failed to prove that they had sufficiently communicated the adverse nature of their possession to their cotenants. The appellants contend that, while the Norville claimants testified that the other cotenants knew of their possession and of their improvements to the land, the Norville claimants never produced evidence that they asserted a fee simple ownership exclusive of the other Navy Cove cotenants.
I
Before addressing each claim in this case, an examination of the applicable substantive law and standard of review would be particularly appropriate. The case of Gosa v. Williams, 480 So.2d 1207 (Ala.1985), is uniquely applicable here, because that case involved an adverse possession claim between cotenants and, in that opinion, this Court addressed both the ore ten-us presumption and the proof required in a case like this one. There, this Court stated:
“ ‘The rule has long been established in this jurisdiction that the possession of one tenant in common is presumed to be the possession of all; and such possession does not become adverse to the cotenant until he is actually ousted or short of ouster, the adverse character of the possession of one is actually known to the other, or the possession of one is so open and notorious in its hostility and exclusiveness as to put the cotenant on notice of its adverse character. Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Markstein v. Schilleci, 258 Ala. 68, 61 So.2d 75 (1952); Hames v. Irwin, 253 Ala. 458, 45 So.2d 281 (1949); Ratliff v. Ratliff, 234 Ala. 320, 175 So. 259 (1937).
“ ‘Before the possession of a coten-ant may be regarded as adverese to his cotenant, he must repudiate the coten-ant’s interest in the property by act or declaration. Livingston v. Livingston, 210 Ala. 420, 98 So. 281 (1923). This means that there must be some express denial of title and right to possession of the fellow cotenant brought home to him openly and unequivocally. Williams v. Sinclair Refining Co., 39 N.M. 388, 47 P.2d 910 (1935); 86 C.J.S. Tenancy in Common § 27. In Ratliff v. Ratliff, supra (234 Ala. at 322, 323, 178 So. at 261), this court stated the rule as follows:
“ . The possession of a tenant in common exercising the customary acts of ownership does not alone operate as a disseisin of cotenants; but there must be positive information of the facts, however informally communicated or acquired_”’ Tyson v. Jackson, 364 So.2d 1140 (Ala.1978).
“388 So.2d at 553.
“In its order, the court below found that plaintiffs had not done the necessary acts to oust defendant Samuel Williams, and had not acquired title by adverse possession. When the evidence is presented ore tenus, this Court will not disturb the trial court’s findings of fact if they are supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous. Eagerton v. Courtaulds North America, Inc., 421 So.2d 104 (Ala.1982). Absent such a showing of plain *1274 and palpable error by the trial court in this case, we are of the opinion that the judgment is due to be, and it hereby is, affirmed.”
480 So.2d at 1208-09 (quoting Edmonds v. Edmonds, 388 So.2d 552, 553 (Ala.1980), which in turn was quoting Tyson v. Jackson, 364 So.2d 1140, 1141-42 (Ala.1978).
See also, Spiller v. Mackereth, 334 So.2d 859 (Ala.1976); Foshee v. Foshee, 278 Ala. 205, 177 So.2d 99 (1965); Winsett v. Winsett, 203 Ala. 373, 83 So. 117 (1919); Sumner v. Hill, 157 Ala. 230, 47 So. 565 (1908).
II
Having considered the arguments of counsel and having thoroughly reviewed the record, we conclude that the judgment of the trial court is due to be reversed and the cause remanded. We recognize that the ore tenus presumption is a high hurdle for an appellant to overcome; however, in this case we find that the evidence introduced to prove ouster fails to meet the burden placed upon a cotenant who is trying to oust his cotenant. Gosa, supra; Dennis v. Dobbs, 474 So.2d 77 (Ala.1985). The evidence was undisputed that the bar pilots intended to establish a selective community, utilizing a loose understanding among themselves that each could “stake a claim” to a parcel of property, but that each would retain only an undivided Vu interest in the whole. Therefore, we can only conclude that, as to each other, the cotenants’ acts of possession were permissive. While the facts, as adduced by the parties, would probably be adequate to prove adverse possession as to a third party, under the particular facts here the trial court erred in finding that the possession was “adverse.”
This is especially true in this cotenancy, because the acts of the claimants/appellees and their predecessors in staking out a portion of the property and exercising dominion over it was not inconsistent with the agreement of the original tenants in common — the bar pilots. The record clearly shows that each of the claimants/appellees knew of “Pilot Town” and the agreement that had existed between the 14 bar pilots. The undisputed evidence is that the 14 bar pilots had agreed that each one of them could pick out a spot in Navy Cove and build a house on it, but that the picking of a spot and the building of a house would not change their ownership in an undivided Vwth interest in Navy Cove. The law as to tenants in common required, and still requires, that there be an ouster by one tenant in common of his cotenants before his possession and occupation can be adverse to his cotenants.
Because we find that there was a failure of proof in this case as to all three sets of claimants, the trial court’s amended decree in their favor is due to be reversed, and the trial court is directed to amend its decree to allow the appellees only their claims as tenants in common that they inherited or obtained by will or deed to the undivided whole property.
Based on the foregoing, the judgment of the trial court is due to be, and it hereby is, reversed and the cause remanded.
REVERSED AND REMANDED WITH DIRECTIONS.
ALMON, BEATTY, ADAMS and HOUSTON, JJ., concur.
ON APPLICATION FOR REHEARING
MADDOX, Justice.
Appellees Warren Norville, Richard G. Norville, Joseph D. Williams, and Miriam Morse applied for rehearing on the ground that this Court, in its opinion filed August 14, 1987, “erroneously concluded that the decree of the trial court was erroneous with respect to property not located within the Bar Pilot tract.”
After reviewing the brief filed by the appellees, we are of the opinion that we should have affirmed the trial court’s judgment with respect to the claim of these appellees to lands located outside the “Navy Cove tract.” Our opinion is extended and our judgment hereby modified to do that.
OPINION EXTENDED; JUDGMENT MODIFIED; AFFIRMED, IN PART; RE-
*1275 VERSED, IN PART; AND REMANDED; APPLICATION DENIED.
ALMON, BEATTY, ADAMS and HOUSTON, JJ., concur.